# EXHIBIT 21

| From: | Sullivan, Cary D. |
|---|---|
| To: | Wendy Heilbut |
| Subject: | RE: Foodwit |
| Date: | Tuesday, October 15, 2024 6:30:50 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Wendy,

Thanks for your email.

My Thursday is tight, but I could talk at 10:30am PT / 1:30pm ET, if that works for you?

I do want to make one thing clear:  Under no circumstance would we be willing disclose to you the specific proprietary and trade secret items we'd be looking for in the inspection.  I'm sure you can appreciate why.  There are workarounds to this, and I'm happy to discuss those on Thursday.  But I don't want your client to have any unrealistic expectations about potential avenues to resolution.

Ultimately, if we have to litigate, so be it.  But I suspect it's in the best interests of both of our clients to avoid that, if possible.

Thanks,
Cary

Cary D. Sullivan
Partner
**JONES DAY® - One Firm Worldwide℠**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Office +1.949.553.7513

---

**From:** Wendy Heilbut <Wendy@heilbutllp.com>
**Sent:** Tuesday, October 15, 2024 2:50 PM
**To:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Subject:** RE: Foodwit

Hey Cary,

I landed late Friday night from a week in California and then my offices were closed yesterday for the holiday. I think a call would be helpful. I'm still digging out from last week/yesterday; could we plan for Thursday? I'm pretty much wide open that day.

I was surprised to see you question Foodwit as trying to "delay things," we have been very responsive to your emails, letters, and calls even though we did not instigate this nor have we been appraised of any true infractions. In my email of October 9, I explained exactly what we are looking for in our discussions: the specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell, and your confirmation that, if Workbench does not include those specific aspects, we can consider this matter closed so that both Trustwell and Foodwit can

move forward in the marketplace. Your below reply did not address this question at all. I hope you will be prepared to do so when we talk by phone.

I look forward to speaking with you and to continuing to work together toward an amicable resolution of any dispute between our clients.

Warmest,
Wendy



## WENDY HEILBUT

Founder • wendy@heilbutllp.com • 917.921.8394

**HEILBUTLLP.COM** • **IG** | **FB** | **IN**

276 Fifth Avenue, Suite 704, PMB 17, New York, NY 10001 **MAP**

This e-mail message, including any attachments, is a communication between Heilbut LLP and the intended recipient(s) only and may contain attorney-client privileged or confidential information. Any use or distribution of this email or any attachments is prohibited. Please inform the sender immediately if you have received this message in error and promptly delete it and any attachments from your mailbox and refrain from sharing or copying it. Thank you.

---

**From:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Sent:** Monday, October 14, 2024 4:05 PM
**To:** Wendy Heilbut <Wendy@heilbutllp.com>
**Subject:** RE: Foodwit

Wendy,

I get the sense your client may have instructed you to delay things. If so, that would be counter-productive to our efforts to resolve this.

Please let me know your availability for a call to discuss the below.

Thanks,
Cary

Cary D. Sullivan
Partner
**JONES DAY® - One Firm Worldwide℠**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Office +1.949.553.7513

---

**From:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Sent:** Thursday, October 10, 2024 1:41 PM
**To:** Wendy Heilbut <Wendy@heilbutllp.com>
**Subject:** RE: Foodwit

Wendy,

Thanks for your message.

After discussing with our client, I think an escrowed data room, in which we could inspect Workbench, would be workable here, at least in theory.  But we'd need to discuss the details.

Please let me know your availability for a call.

Thanks,
Cary

Cary D. Sullivan
Partner
**JONES DAY® - One Firm Worldwide℠**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Office +1.949.553.7513

---

**From:** Wendy Heilbut <Wendy@heilbutllp.com>
**Sent:** Wednesday, October 9, 2024 2:35 PM
**To:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Subject:** Re: Foodwit

Cary,

Thank you for your email this week, and for our friendly and productive phone call on Friday, September 27. I appreciate your willingness to work with me to see if we can reach a mutually beneficial resolution for our clients. Our aim is a resolution which includes a mechanism by which we can confirm that any claims by Trustwell against Foodwit are resolved. From our perspective, the discussions between us have been confusing and a bit frustrating, because they do not seem to include such a mechanism for resolution or even a confirmation of what a resolution would look like; instead, Trustwell's requirements have shifted even over the relatively short span of our discussions.

In your initial letter of August 6, you demanded that we "[t]erminate all use by Foodwit of Trustwell's nutritional data and related information and software, including its database, to develop, launch or support any products or services that compete, directly or indirectly, with Trustwell." In my reply letter of August 9, I confirmed that Foodwit had never done any such thing, and that Foodwit would go further than your request by not renewing its Genesis subscription.

Your second letter, on September 17, added a new demand, asking us to provide "software, software code, database structures and content," and so on, to the extent "based on Trustwell's confidential, proprietary, and trade secret information," even though I had already confirmed to you, in my letter of August 9, that no such materials existed, because Foodwit "has not 'secretly' been using any of Trustwell's assets to create a competitive product" and "has not been reverse engineering any of Trustwell's software." Finally, in our phone call of September 27, you stated that Trustwell would no longer be satisfied with written acknowledgements, but instead required that we demonstrate the Workbench product to Trustwell.

We would like to keep working together to assure Trustwell that Foodwit has not violated any

obligation to Trustwell. For those discussions to be constructive, Foodwit must have confidence that they can lead to an amicable and definite resolution. To achieve this confidence, we must understand what you are looking for, and what specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell, and receive your confirmation that, if the Workbench product does not include any of those specific aspects, Trustwell will consider this matter closed and both Trustwell and Foodwit can move forward in the marketplace. These assurances are important to us, as I'm sure you can understand, because we would be taking a significant step of trust by sharing more information with Trustwell, a competitor in the market that has already threatened a litigation we believe to be meritless. Without these assurances, we have no way to confirm that Trustwell is not on a fishing expedition. You have said that your client is not, and we are pleased to hear that; we hope you agree that the way to avoid a fishing expedition is to define the objectives in advance and stick to them.

Please discuss these points with your client and let me know your thoughts. We remain confident that Foodwit has not violated any obligation to Trustwell, and we hope to work with you so that Trustwell can achieve the same confidence.

Warmest,
Wendy



### WENDY HEILBUT

Founder • wendy@heilbutllp.com • 917.921.8394

**HEILBUTLLP.COM** • **IG** | **FB** | **IN**

276 Fifth Avenue, Suite 704, PMB 17, New York, NY 10001 **MAP**

This e-mail message, including any attachments, is a communication between Heilbut LLP and the intended recipient(s) only and may contain attorney-client privileged or confidential information. Any use or distribution of this email or any attachments is prohibited. Please inform the sender immediately if you have received this message in error and promptly delete it and any attachments from your mailbox and refrain from sharing or copying it. Thank you.

**From:** Wendy Heilbut <Wendy@heilbutllp.com>
**Date:** Tuesday, October 8, 2024 at 10:25 PM
**To:** "Sullivan, Cary D." <carysullivan@jonesday.com>
**Subject:** Re: Foodwit

Cary,

I'm still on the road all week (I'm in your time zone now!) and have a difficult time connecting with my client. We spoke today and I will have a reply to in the morning. I appreciate your patience.

Warmest,
Wendy



### WENDY HEILBUT

Founder • wendy@heilbutllp.com • 917.921.8394

**HEILBUTLLP.COM** • **IG** | **FB** | **IN**

276 Fifth Avenue, Suite 704, PMB 17, New York, NY 10001 **MAP**

This e-mail message, including any attachments, is a communication between Heilbut LLP and the intended recipient(s) only and may contain attorney-client privileged or confidential information. Any use or distribution of this email or any attachments is prohibited. Please inform the sender immediately if you have received this message in error and promptly delete it and any attachments from your mailbox and refrain from sharing or copying it. Thank you.

**From:** Wendy Heilbut <Wendy@heilbutllp.com>
**Date:** Monday, October 7, 2024 at 4:15 PM
**To:** "Sullivan, Cary D." <carysullivan@jonesday.com>
**Subject:** Re: Foodwit

Hey Cary,

Hopefully, you received my OOO at the end of last week. I have had conversations with Foodwit on this, but don't yet have anything definitive to report. Let me get back to you tomorrow.

Warmest,
Wendy



## WENDY HEILBUT

Founder • wendy@heilbutllp.com • 917.921.8394

**HEILBUTLLP.COM** • **IG** | **FB** | **IN**

276 Fifth Avenue, Suite 704, PMB 17, New York, NY 10001 **MAP**

This e-mail message, including any attachments, is a communication between Heilbut LLP and the intended recipient(s) only and may contain attorney-client privileged or confidential information. Any use or distribution of this email or any attachments is prohibited. Please inform the sender immediately if you have received this message in error and promptly delete it and any attachments from your mailbox and refrain from sharing or copying it. Thank you.

**From:** "Sullivan, Cary D." <carysullivan@jonesday.com>
**Date:** Friday, October 4, 2024 at 2:10 PM
**To:** Wendy Heilbut <Wendy@heilbutllp.com>
**Subject:** Foodwit

Wendy,

I'm following up on our discussion last Friday. I understood you were going to get back to me earlier this week. Please let me know where things stand.

Thanks,
Cary

Cary D. Sullivan
Partner
**JONES DAY® - One Firm Worldwide℠**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Office +1.949.553.7513

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

# EXHIBIT 22



## Re: Follow Up
1 message

**Katy Jones** <kjones@trustwell.com>                                    Thu, Nov 14, 2024 at 12:06 PM
To: Becki Holmes <becki@foodwit.com>

Becki,

Thank you again for the time earlier this week to discuss our issues related to protection of Trustwell's trade secrets. I met with our counsel the week and wanted to follow up on next steps.

We are now compiling a list of specific items we would like to review within your product to help us determine whether it may contain elements covered by Trustwell's IP. This list will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data. Once we have that list finalized, I will circle back again with next steps on the process and approach for verification using that list.

Thank you for keeping the lines of communication open as we work through this process. Please let me know if you have any immediate questions.



**Katy Jones**
**Chief Executive Officer, Trustwell**

📱 919.883.7848   ✉ kjones@trustwell.com   🌐 www.trustwell.com
⊙ www.esha.com   ⊙ www.foodlogiq.com

---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, October 31, 2024 at 8:46 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Thanks for the voicemail.  As a point of info, I'm based in Zurich (CET). Tomorrow is a public holiday; could we find some time next week?

Here's a link to my schedule to schedule something. Safe travels and looking forward to speaking with you.

Becki

On Mon, Oct 28, 2024 at 11:06 AM Katy Jones <kjones@trustwell.com> wrote:

> Becki,
>
> Reaching out to acknowledge your call last week. I was travelling internationally but am back today and will return your call. I look forward to connecting.



919.883.7848    kjones@trustwell.com    www.trust

www.esha.com    www.foodlogiq.com

Image removed by sender. __tpx__

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, August 22, 2024 at 1:39 PM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Given the matter was already escalated to legal counsel, it would be best for the attorneys to handle any additional communication.


Best,

Becki


On Tue, Aug 20, 2024 at 7:00 PM Katy Jones <kjones@trustwell.com> wrote:

Becki,


We received your response from our cease-and-desist letter, and I am following up to schedule time to review that response and several issues we do not feel have been resolved. I am traveling the end of this week but am open 8/26 at 2:00 PM ET or 8/27 at 1:00 PM ET. If none of those times work for you, please pass along alternative options.


Error! Filename not specified.

**Katy Jones**
**Chief Executive Officer, Trustwell**

Error! Filename not specified. 919.883.7848    Error! Filename not specified. kjones@trustwell.com    Error! Filename not specified. www.trustwell.com

Error! Filename not specified. www.esha.com    Error! Filename not specified. www.foodlogiq.com


**Error! Filename not specified.**

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

# EXHIBIT 23



---

**Re: Follow Up**
1 message

---

**Katy Jones** <kjones@trustwell.com>                                              Fri, Dec 13, 2024 at 12:49 PM
To: Becki Holmes <becki@foodwit.com>

Becki,

Thank you for your patience as we circle back on this issue. To ensure we can collaboratively and efficiently move forward to resolve these issues, we would like to do the following:

1. Schedule a 45-minute session to assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP.

   Please let us know your availability for a session during one of the following time slots:

   - Monday, January 6th 8 AM – 10:30 ET
   - Tuesday, January 7th 8 AM – 10:30 ET

   The session with include me and our Chief Product Officer Todd Dolinsky. If these options don't work, feel free to suggest alternative times that suit your schedule.

   Immediately preceding the scheduled session, we will send over a short demo scenario script to facilitate further clarification and review. The scenarios, which should take no more than 30 minutes to review, will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data.

2. We request a review of your software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs. This review is to ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist. We do not need any access or review of your actual software code. I have copied in our CTO who can coordinate the review, either live with a member of your engineering team or exports from your JIRA instance (or similar engineering management platform).

We look forward to your response and appreciate your cooperation in resolving this matter.



**Katy Jones**
**Chief Product Officer, Trustwell**

📱 919.883.7848     ✉ kjones@trustwell.com     🌐 www.trustwell.com

⊙ www.esha.com     ⊙ www.foodlogiq.com


Consumer Sentiment Report:
Food Transparency & Recall Responsiveness

Download Here

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Thursday, November 14, 2024 at 3:06 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,

Thank you again for the time earlier this week to discuss our issues related to protection of Trustwell's trade secrets. I met with our counsel the week and wanted to follow up on next steps.

We are now compiling a list of specific items we would like to review within your product to help us determine whether it may contain elements covered by Trustwell's IP. This list will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data. Once we have that list finalized, I will circle back again with next steps on the process and approach for verification using that list.

Thank you for keeping the lines of communication open as we work through this process. Please let me know if you have any immediate questions.



**Katy Jones**
**Chief Executive Officer, Trustwell**

 919.883.7848    kjones@trustwell.com    www.trustw
www.esha.com    www.foodlogiq.com

__tpx__

---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, October 31, 2024 at 8:46 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Thanks for the voicemail.  As a point of info, I'm based in Zurich (CET). Tomorrow is a public holiday; could we find some time next week?

Here's a link to my schedule to schedule something. Safe travels and looking forward to speaking with you.

Becki

On Mon, Oct 28, 2024 at 11:06 AM Katy Jones <kjones@trustwell.com> wrote:

Becki,

Reaching out to acknowledge your call last week. I was travelling internationally but am back today and will return your call. I look forward to connecting.

**Katy Jones**
**Chief Executive Officer, Trustwell**

919.883.7848    kjones@trustwell.com    www.trust
www.esha.com    www.foodlogiq.com

 Image removed by sender. __tpx__

---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, August 22, 2024 at 1:39 PM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Given the matter was already escalated to legal counsel, it would be best for the attorneys to handle any additional communication.


Best,

Becki


On Tue, Aug 20, 2024 at 7:00 PM Katy Jones <kjones@trustwell.com> wrote:

> Becki,
>
>
> We received your response from our cease-and-desist letter, and I am following up to schedule time to review that response and several issues we do not feel have been resolved. I am traveling the end of this week but am open 8/26 at 2:00 PM ET or 8/27 at 1:00 PM ET. If none of those times work for you, please pass along alternative options.
>
>
> Error! Filename not specified. **Katy Jones**
> **Chief Executive Officer, Trustwell**
>
> Error! Filename not specified. 919.883.7848   Error! Filename not specified. kjones@trustwell.com   Error! Filename not specified. www.trustwell.com
> Error! Filename not specified. www.esha.com   Error! Filename not specified. www.foodlogiq.com
>
>
> Error! Filename not specified.

> **Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

> **Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

# EXHIBIT 24



## Re: Follow Up
1 message

**Becki Holmes** <becki@foodwit.com>
Fri, Dec 20, 2024 at 12:40 AM
To: Katy Jones <kjones@trustwell.com>

Katy:

Thanks for your email of last Friday, December 13. I am spending a lot of time this week and next week with my family, so apologies for responding more slowly than I otherwise would. I hope you are able to spend time with your family as the end of the year approaches.

I worry that we have moved backwards from our phone call of November 11. On that call, you said you couldn't take our word that we hadn't used your IP improperly, and I responded that we also couldn't take your word that you weren't on a fishing expedition for a legal complaint. I proposed a solution, which my lawyer also proposed to your lawyer in October: Trustwell can tell us what specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell, and provide confirmation that, if the Workbench product does not include any of those specific aspects, Trustwell will not further pursue legal action, and we can move forward with our businesses. That way no one has to take anyone's word for anything: we can confirm that you're not on a fishing expedition, and you can confirm that we haven't violated any obligation to you. You seemed receptive to this idea, and said you would go back to your team to figure out specifics.

Unfortunately, your email of December 13 returned to generalities. You proposed to "assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP," including "verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data." As you know, that could be anything. You must know what you want to know, but you won't tell us what that is, and you are asking us to take your word for it. As I said on our November call, if we're taking each other's word, you can take my word for it that we have not violated any obligation to Trustwell, and we can go have nice holidays with our families. But you don't want to take our word for it; I can't make you, but surely you understand that the same rule must apply to both Foodwit and Trustwell. We remain willing to work out a plan in which nobody takes anyone's word for anything, as I've described above. But we can't agree that you needn't take our word, but we must take yours. I hope you reconsider our proposal.

That brings me to your second request, which also seems like a step backwards from our November 11 call. On that call, you noted several times that you were not seeking our source code, and that you understood why we should not provide it. But in your December 13 email you asked for "software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs," which you said was not "access or review of your actual software code." As you know, however, software change logs contain source code, often substantial amounts of it, making your December request a step backward from our November phone call, and significantly more intrusive than you and I agreed any request should be. I hope you will reconsider this request as well.

I want to raise one final point, because I would like for you to understand as fully as possible why we worry that you are not looking to ensure fair competition between us, but instead are on a fishing expedition. You state in your email that the purpose of your second request is to "ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist." None were, but that's not the point: this request seems intended to lead only to litigation. Assume for the moment that in August our Workbench product included a feature that you contend is improper, and that we removed that feature between August and now. (Again, we didn't, but assume we did.) It seems to us that, if your goal were to prevent improper use of your IP, you wouldn't care whether a feature was in the product in August, and would just be happy that it wasn't there now. As far as we can see, the only reason you would care whether any feature was previously in Workbench, rather than currently, would be if you were looking for an excuse to sue us. (If there is another reason, please tell me what it is.) Think about this situation from our perspective: although we are confident that we did nothing wrong, plenty of people who did nothing wrong get sued and have to spend years in litigation. Your lawyer sent us a demand letter and then a draft complaint. Now you're asking us to trust that your motives are pure, while asking questions that only make sense if they're not.

I hope we can return to the spirit of our November 11 call. I'll be back in the office the week of January 6, and I suggest that you and I have another one-on-one call to discuss these issues further. I hope that we can work together to come up with a solution that is fair to everyone, and provides both of us with the assurances we need to move forward. Until then, I hope that you have a lovely and restful holiday season.

Becki

On Fri, Dec 13, 2024 at 9:52 PM Katy Jones <kjones@trustwell.com> wrote:

> Looping in Doug Bell, our CTO, and Todd Dolinsky, our CPO, on the thread.
>
> **Katy Jones**
> **Chief Executive Officer, Trustwell**
>
> 919.883.7848   kjones@trustwell.com   www.trustwell.com
> www.esha.com   www.foodlogiq.com
>
> 

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Friday, December 13, 2024 at 3:49 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,

Thank you for your patience as we circle back on this issue. To ensure we can collaboratively and efficiently move forward to resolve these issues, we would like to do the following:

1. Schedule a 45-minute session to assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP.

   Please let us know your availability for a session during one of the following time slots:

   · Monday, January 6th 8 AM – 10:30 ET

   · Tuesday, January 7th 8 AM – 10:30 ET

   The session with include me and our Chief Product Officer Todd Dolinsky. If these options don't work, feel free to suggest alternative times that suit your schedule.

   Immediately preceding the scheduled session, we will send over a short demo scenario script to facilitate further clarification and review. The scenarios, which should take no more than 30 minutes to review, will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data.

2. We request a review of your software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs. This review is to ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist. We do not need any access or review of your actual software code. I have copied in our CTO who can coordinate the review, either live with a member of your engineering team or exports from your JIRA instance (or similar engineering management platform).

We look forward to your response and appreciate your cooperation in resolving this matter.



**Katy Jones**
**Chief Executive Officer, Trustwell**

919.883.7848     kjones@trustwell.com     www.trust

www.esha.com     www.foodlogiq.com

App Banner Image

Image removed by sender. __tpx__

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Thursday, November 14, 2024 at 3:06 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,

Thank you again for the time earlier this week to discuss our issues related to protection of Trustwell's trade secrets. I met with our counsel the week and steps.

We are now compiling a list of specific items we would like to review within your product to help us determine whether it may contain elements covered by Trustwell's IP. This list will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data. Once we have that list finalized, I will circle back again with next steps on the process and approach for verification using that list.

Thank you for keeping the lines of communication open as we work through this process. Please let me know if you have any immediate questions.



**Katy Jones**
**Chief Executive Officer, Trustwell**



919.883.7848     kjones@trustwell.com     www.trustw...

www.esha.com     www.foodlogiq.com



---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, October 31, 2024 at 8:46 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Thanks for the voicemail.  As a point of info, I'm based in Zurich (CET). Tomorrow is a public holiday; could we find some time next week?

Here's a link to my schedule to schedule something. Safe travels and looking forward to speaking with you.

Becki

On Mon, Oct 28, 2024 at 11:06 AM Katy Jones <kjones@trustwell.com> wrote:

> Becki,
>
> Reaching out to acknowledge your call last week. I was travelling internationally but am back today and will return your call. I look forward to connecting.
>
> 
>
> **Katy Jones**
> **Chief Executive Officer, Trustwell**
>
> 919.883.7848     kjones@trustwell.com     www.trust...
>
> www.esha.com     www.foodlogiq.com
>
> Image removed by sender. __tpx__

---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, August 22, 2024 at 1:39 PM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Given the matter was already escalated to legal counsel, it would be best for the attorneys to handle any additional communication.

Best,

Becki

On Tue, Aug 20, 2024 at 7:00 PM Katy Jones <kjones@trustwell.com> wrote:

Becki,

We received your response from our cease-and-desist letter, and I am following up to schedule time to review that response and several issues we do not feel have been resolved. I am traveling the end of this week but am open 8/26 at 2:00 PM ET or 8/27 at 1:00 PM ET. If none of those times work for you, please pass along alternative options.



**Katy Jones**
**Chief Executive Officer, Trustwell**

Error! Filename not specified.  919.883.7848   Error! Filename not specified.  kjones@trustwell.com   Error! Filename not specified.  www.trustwell.com
Error! Filename not specified.  www.esha.com   Error! Filename not specified.  www.foodlogiq.com

Error! Filename not specified.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

# EXHIBIT 25



**Re: Follow Up**
1 message

**Katy Jones** <kjones@trustwell.com>                                                     Tue, Dec 31, 2024 at 10:12 AM
To: Becki Holmes <becki@foodwit.com>

No apologies needed at all. I have been doing the same here 😊

I am sorry you feel we have taken a step back but the requests we have put forward are to provide us with verification of your counter claims, not to bolster our own. The fact that we're willing to engage in this exercise should demonstrate to you that we're not simply looking to file suit. We could have filed months ago if we were only interested in litigation. I am solely interested in protecting Trustwell IP and for obvious reasons, we can't share the scenarios we want to demo before the demo. That would defeat the purpose.

For the change logs, we don't need to review source code (we don't store code in our JIRA tickets). We simply need a description of features that have been removed or changed since August. If you are using JIRA, it would be a simple search and then limiting the fields to show only title, description, created/updated date.

I am happy to jump on another call next week but what we have outlined is our requirement to resolve this matter without litigation.

Katy



**Katy Jones**
**Chief Executive Officer, Trustwell**

📱 919.883.7848     ✉ kjones@trustwell.com     🌐 www.trustwell.com
⊙ www.esha.com     ⊙ www.foodlogiq.com

Future-Proof Your Supply Chain:
Streamline Operations with
Smarter Specification Management

Live Webinar
January 16th
2 pm ET

Register Here

---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Friday, December 20, 2024 at 3:41 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy:

Thanks for your email of last Friday, December 13. I am spending a lot of time this week and next week with my family, so apologies for responding more slowly than I otherwise would. I hope you are able to spend time with your family as the end of the year approaches.

I worry that we have moved backwards from our phone call of November 11. On that call, you said you couldn't take our word that we hadn't used your IP improperly, and I responded that we also couldn't take your word that you weren't on a fishing expedition for a legal complaint. I proposed a solution, which my lawyer also proposed to your lawyer in October: Trustwell can tell us what specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell, and provide confirmation that, if the Workbench product does not include any of those specific aspects, Trustwell will not further pursue legal action, and we can move forward with our businesses. That way no one has to take anyone's word for anything: we can confirm that you're not on a fishing expedition, and you can confirm that we haven't violated any obligation to you. You seemed receptive to this idea, and said you would go back to your team to figure out specifics.

Unfortunately, your email of December 13 returned to generalities. You proposed to "assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP," including "verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data." As you know, that could be anything. You must know what you want to know, but you won't tell us what that is, and you are asking us to take your word for it. As I said on our November call, if we're taking each other's word, you can take my word for it that we have not violated any obligation to Trustwell, and we can go have nice holidays with our families. But you don't want to take our word for it; I can't make you, but surely you understand that the same rule must apply to both Foodwit and Trustwell. We remain willing to work out a plan in which nobody takes anyone's word for anything, as I've described above. But we can't agree that you needn't take our word, but we must take yours. I hope you reconsider our proposal.

That brings me to your second request, which also seems like a step backwards from our November 11 call. On that call, you noted several times that you were not seeking our source code, and that you understood why we should not provide it. But in your December 13 email you asked for "software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs," which you said was not "access or review of our actual software code." As you know, however, software change logs contain source code, often substantial amounts of it, making your December request a step backward from our November phone call, and significantly more intrusive than you and I agreed any request should be. I hope you will reconsider this request as well.

I want to raise one final point, because I would like for you to understand as fully as possible why we worry that you are not looking to ensure fair competition between us, but instead are on a fishing expedition. You state in your email that the purpose of your second request is to "ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist." None were, but that's not the point: this request seems intended to lead only to litigation. Assume for the moment that in August our Workbench product included a feature that you contend is improper, and that we removed that feature between August and now. (Again, we didn't, but assume we did.) It seems to us that, if your goal were to prevent improper use of your IP, you wouldn't care whether a feature was in the product in August, and would just be happy that it wasn't there now. As far as we can see, the only reason you would care whether any feature was previously in Workbench, rather than currently, would be if you were looking for an excuse to sue us. (If there is another reason, please tell me what it is.) Think about this situation from our perspective: although we are confident that we did nothing wrong, plenty of people who did nothing wrong get sued and have to spend years in litigation. Your lawyer sent us a demand letter and then a draft complaint. Now you're asking us to trust that your motives are pure, while asking questions that only make sense if they're not.

I hope we can return to the spirit of our November 11 call. I'll be back in the office the week of January 6, and I suggest that you and I have another one-on-one call to discuss these issues further. I hope that we can work together to come up with a solution that is fair to everyone, and provides both of us with the assurances we need to move forward. Until then, I hope that you have a lovely and restful holiday season.


Becki


On Fri, Dec 13, 2024 at 9:52 PM Katy Jones <kjones@trustwell.com> wrote:

> Looping in Doug Bell, our CTO, and Todd Dolinsky, our CPO, on the thread.



> **From:** Katy Jones <kjones@trustwell.com>
> **Date:** Friday, December 13, 2024 at 3:49 PM
> **To:** Becki Holmes <becki@foodwit.com>
> **Subject:** Re: Follow Up
>
> Becki,
>
> Thank you for your patience as we circle back on this issue. To ensure we can collaboratively and efficiently move forward to resolve these issues, we would like to do the following:
>
> 1. Schedule a 45-minute session to assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP.
>
>    Please let us know your availability for a session during one of the following time slots:

The session with include me and our Chief Product Officer Todd Dolinsky. If these options don't work, feel free to suggest alternative times that suit your schedule.

Immediately preceding the scheduled session, we will send over a short demo scenario script to facilitate further clarification and review. The scenarios, which should take no more than 30 minutes to review, will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data.

2. We request a review of your software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs. This review is to ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist. We do not need any access or review of your actual software code. I have copied in our CTO who can coordinate the review, either live with a member of your engineering team or exports from your JIRA instance (or similar engineering management platform).

We look forward to your response and appreciate your cooperation in resolving this matter.



**Katy Jones**
**Chief Executive Officer, Trustwell**

Error! Filename not specified.  919.883.7848   Error! Filename not specified.  kjones@trustwell.com   Error! Filename not specified.  www.trustwell.com
Error! Filename not specified.  www.esha.com   Error! Filename not specified.  www.foodlogiq.com

Error! Filename not specified.

Error! Filename not specified.

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Thursday, November 14, 2024 at 3:06 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,

Thank you again for the time earlier this week to discuss our issues related to protection of Trustwell's trade secrets. I met with our counsel the week and wanted to follow up on next steps.

We are now compiling a list of specific items we would like to review within your product to help us determine whether it may contain elements covered by Trustwell's IP. This list will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data. Once we have that list finalized, I will circle back again with next steps on the process and approach for verification using that list.

Thank you for keeping the lines of communication open as we work through this process. Please let me know if you have any immediate questions.



**Katy Jones**
**Chief Executive Officer, Trustwell**

Error! Filename not specified.  919.883.7848   Error! Filename not specified.  kjones@trustwell.com   Error! Filename not specified.  www.trustwell.com
Error! Filename not specified.  www.esha.com   Error! Filename not specified.  www.foodlogiq.com

**Error! Filename not specified.**

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, October 31, 2024 at 8:46 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Thanks for the voicemail. As a point of info, I'm based in Zurich (CET). Tomorrow is a public holiday; could we find some time next week?

Here's a link to my schedule to schedule something. Safe travels and looking forward to speaking with you.

Becki

On Mon, Oct 28, 2024 at 11:06 AM Katy Jones <kjones@trustwell.com> wrote:

Becki,

Reaching out to acknowledge your call last week. I was travelling internationally but am back today and will return your call. I look forward to connecting.



**Katy Jones**
**Chief Executive Officer, Trustwell**

**Error! Filename not specified.** 919.883.7848   **Error! Filename not specified.** kjones@trustwell.com   **Error! Filename not specified.** www.trustwell.com

**Error! Filename not specified.** www.esha.com   **Error! Filename not specified.** www.foodlogiq.com

**Error! Filename not specified.**

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, August 22, 2024 at 1:39 PM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Given the matter was already escalated to legal counsel, it would be best for the attorneys to handle any additional communication.

Best,

Becki

On Tue, Aug 20, 2024 at 7:00 PM Katy Jones <kjones@trustwell.com> wrote:

Becki,

We received your response from our cease-and-desist letter, and I am following up to schedule time to review that response and several issues we do not feel have been resolved. I am traveling the end of this week but am open 8/26 at 2:00 PM ET or 8/27 at 1:00 PM ET. If none of those times work for you, please pass along alternative options.



**Katy Jones**
**Chief Executive Officer, Trustwell**

**Error! Filename not specified.** 919.883.7848   **Error! Filename not specified.** kjones@trustwell.com   **Error! Filename not specified.** www.trustwell.com

**Error! Filename not specified.** www.esha.com   **Error! Filename not specified.** www.foodlogiq.com

Error! Filename not specified.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

# EXHIBIT 26





---

**Re: Follow Up**
1 message

---

**Katy Jones** <kjones@trustwell.com>                                           Sat, Jan 18, 2025 at 5:28 AM
To: Becki Holmes <becki@foodwit.com>

Becki,

Thank you again for your time this week to discuss our path forward. I have given our conversation a lot of thought this week and remain committed to working with Foodwit to address our issues. In order to move forward, we are willing to do the following:

- Provide an advanced copy of the script on what we would like Foodwit to demo.
- Provide in writing that we will not pursue litigation if we do not find evidence of IP infringement during that demo.

Our requests for resolution remain the same:

- Schedule a demo session to assess your product's functionality and data to help us determine whether it contains elements covered by Trustwell's IP.

- Review of software change logs (no code) for the removal of any features removed between August 1, 2024, and the date we receive the logs.

As I reiterated on Monday, our intent is to verify your claims that you did not infringe upon Trustwell's IP when you built a competitive product to Genesis while under contract with Trustwell. We have been going back and forth on these requests for months now and need to align on a timeline to resolution. I believe you said that you were traveling this week, so we are going to provide you with a deadline of February 7th to schedule the demo. If you do not schedule the session to take place prior to February 7th, we will unfortunately have to move forward with filing litigation. I look forward to your response.

Katy



**Katy Jones**
**Chief Executive Officer, Trustwell**

📱 919.883.7848　✉ kjones@trustwell.com　🌐 www.trustwell.com
⊙ www.esha.com　⊙ www.foodlogiq.com

---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Friday, January 10, 2025 at 5:31 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Thanks, Katy. A meeting invite has been set for Monday. Talk to you then.

Becki

On Fri, Jan 10, 2025 at 3:06 AM Katy Jones <kjones@trustwell.com> wrote:

> Monday at 8:30 am ET works for me!
>
> ---
> **From:** Becki Holmes <becki@foodwit.com>
> **Sent:** Thursday, January 9, 2025 2:22:58 PM
> **To:** Katy Jones <kjones@trustwell.com>
> **Subject:** Re: Follow Up

Katy,

Hope you had a nice holiday and that your new year is off to a good start. This week has filled up quickly with the new year kicking off, and some key team members on holiday. I'm also preparing for upcoming travel in the next two weeks. If you're free to connect this week or early next, I have the following availability:

- Tomorrow - 8:00 AM ET
- Monday, 8:00 AM ET or 8:30 AM ET

Please let me know if either times work for you or feel free to propose alternatives.

Becki

On Tue, Dec 31, 2024 at 7:12 PM Katy Jones <kjones@trustwell.com> wrote:

No apologies needed at all. I have been doing the same here 

I am sorry you feel we have taken a step back but the requests we have put forward are to provide us with verification of your counter claims, not to bolster our own. The fact that we're willing to engage in this exercise should demonstrate to you that we're not simply looking to file suit. We could have filed months ago if we were only interested in litigation. I am solely interested in protecting Trustwell IP and for obvious reasons, we can't share the scenarios we want to demo before the demo. That would defeat the purpose.

For the change logs, we don't need to review source code (we don't store code in our JIRA tickets). We simply need a description of features that have been removed or changed since August. If you are using JIRA, it would be a simple search and then limiting the fields to show only title, description, created/updated date.

I am happy to jump on another call next week but what we have outlined is our requirement to resolve this matter without litigation.

Katy


**Katy Jones**
**Chief Executive Officer, Trustwell**

 919.883.7448     kjones@trustwell.com     www.trustwell

 www.esha.com     www.foodlogiq.com



 __tpx__

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Friday, December 20, 2024 at 3:41 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy:

Thanks for your email of last Friday, December 13. I am spending a lot of time this week and next week with my family, so apologies for responding more slowly than I otherwise would. I hope you are able to spend time with your family as the end of the year approaches.

I worry that we have moved backwards from our phone call of November 11. On that call, you said you couldn't take our word that we hadn't used your IP improperly, and I responded that we also couldn't take your word that you weren't on a fishing expedition for a legal complaint. I proposed a solution, which my lawyer also proposed to your lawyer in October: Trustwell can tell us what specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell, and provide confirmation that, if the Workbench product does not include any of those specific aspects, Trustwell will not further pursue legal action, and we can move forward with our businesses. That way no one has to take anyone's word for anything: we can confirm that you're not on a fishing expedition, and you can confirm that we haven't violated any obligation to you. You seemed receptive to this idea, and said you would go back to your team to figure out specifics.

Unfortunately, your email of December 13 returned to generalities. You proposed to "assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP," including "verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data." As you know, that could be anything. You must know what you want to know, but you won't tell us what it is, and you are asking us

to take your word for it.  As I said on our November call, if we're taking each other's word, you can take my word for it that we have not violated any obligation to Trustwell, and we can go have nice holidays with our families.  But you don't want to take our word for it; I can't make you, but surely you understand that the same rule must apply to both Foodwit and Trustwell.  We remain willing to work out a plan in which nobody takes anyone's word for anything, as I've described above.  But we can't agree that you needn't take our word, but we must take yours.  I hope you reconsider our proposal.

That brings me to your second request, which also seems like a step backwards from our November 11 call.  On that call, you noted several times that you were not seeking our source code, and that you understood why we should not provide it.  But in your December 13 email you asked for "software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs," which you said was not "access or review of your actual software code."  As you know, however, software change logs contain source code, often substantial amounts of it, making your December request a step backward from our November phone call, and significantly more intrusive than you and I agreed any request should be.  I hope you will reconsider this request as well.

I want to raise one final point, because I would like for you to understand as fully as possible why we worry that you are not looking to ensure fair competition between us, but instead are on a fishing expedition.  You state in your email that the purpose of your second request is to "ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist."  None were, but that's not the point:  this request seems intended to lead only to litigation.  Assume for the moment that in August our Workbench product included a feature that you contend is improper, and that we removed that feature between August and now.  (Again, we didn't, but assume we did.)  It seems to us that, if your goal were to prevent improper use of your IP, you wouldn't care whether a feature was in the product in August, and would just be happy that it wasn't there now.  As far as we can see, the only reason you would care whether any feature was previously in Workbench, rather than currently, would be if you were looking for an excuse to sue us.  (If there is another reason, please tell me what it is.)  Think about this situation from our perspective:  although we are confident that we did nothing wrong, plenty of people who did nothing wrong get sued and have to spend years in litigation.  Your lawyer sent us a demand letter and then a draft complaint.  Now you're asking us to trust that your motives are pure, while asking questions that only make sense if they're not.

I hope we can return to the spirit of our November 11 call.  I'll be back in the office the week of January 6, and I suggest that you and I have another one-on-one call to discuss these issues further.  I hope that we can work together to come up with a solution that is fair to everyone, and provides both of us with the assurances we need to move forward.  Until then, I hope that you have a lovely and restful holiday season.


Becki


On Fri, Dec 13, 2024 at 9:52 PM Katy Jones <kjones@trustwell.com> wrote:

> Looping in Doug Bell, our CTO, and Todd Dolinsky, our CPO, on the thread.
>
>
> Error! Filename not specified.
>
> **Katy Jones**
> **Chief Executive Officer, Trustwell**
>
> Error! Filename not specified. 919.883.7848  Error! Filename not specified. kjones@trustwell.com  Error! Filename not specified. www.trustwell.com
> Error! Filename not specified. www.esha.com  Error! Filename not specified. www.foodlogiq.com
>
>
> Error! Filename not specified.
>
>
> Error! Filename not specified.

---

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Friday, December 13, 2024 at 3:49 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,


Thank you for your patience as we circle back on this issue. To ensure we can collaboratively and efficiently move forward to resolve these issues, we would like to do the following:


1. Schedule a 45-minute session to assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP.

   Please let us know your availability for a session during one of the following time slots:

   · Monday, January 6th 8 AM – 10:30 ET

   · Tuesday, January 7th 8 AM – 10:30 ET


   The session with include me and our Chief Product Officer Todd Dolinsky. If these options don't work, feel free to suggest alternative times that suit your schedule.

Immediately preceding the scheduled session, we will send over a short demo scenario script to facilitate further clarification and review. The session should take no more than 30 minutes to review and focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data.

2. We request a review of your software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs. This review is to ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist. We do not need any access or review of your actual software code. I have copied in our CTO who can coordinate the review, either live with a member of your engineering team or exports from your JIRA instance (or similar engineering management platform).

We look forward to your response and appreciate your cooperation in resolving this matter.



**Katy Jones**
Chief Executive Officer, Trustwell

Error! Filename not specified. 919.883.7848   Error! Filename not specified. kjones@trustwell.com   Error! Filename not specified. www.trustwell.com

Error! Filename not specified. www.esha.com   Error! Filename not specified. www.foodlogiq.com

Error! Filename not specified.

Error! Filename not specified.

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Thursday, November 14, 2024 at 3:06 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,

Thank you again for the time earlier this week to discuss our issues related to protection of Trustwell's trade secrets. I met with our counsel the week and wanted to follow up on next steps.

We are now compiling a list of specific items we would like to review within your product to help us determine whether it may contain elements covered by Trustwell's IP. This list will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data. Once we have that list finalized, I will circle back again with next steps on the process and approach for verification using that list.

Thank you for keeping the lines of communication open as we work through this process. Please let me know if you have any immediate questions.



**Katy Jones**
Chief Executive Officer, Trustwell

Error! Filename not specified. 919.883.7848   Error! Filename not specified. kjones@trustwell.com   Error! Filename not specified. www.trustwell.com

Error! Filename not specified. www.esha.com   Error! Filename not specified. www.foodlogiq.com

Error! Filename not specified.

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, October 31, 2024 at 8:46 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Thanks for the voicemail. As a point of info, I'm based in Zurich (CET). Tomorrow is a public holiday, could we find some time next week? Here's a [link to my schedule](#) to schedule something. Safe travels and looking forward to speaking with you.

Becki

On Mon, Oct 28, 2024 at 11:06 AM Katy Jones <[kjones@trustwell.com](#)> wrote:

> Becki,
>
> Reaching out to acknowledge your call last week. I was travelling internationally but am back today and will return your call. I look forward to connecting.



**Katy Jones**
Chief Executive Officer, Trustwell

| **Error! Filename not specified.** 919.883.7848 | **Error! Filename not specified.** kjones@trustwell.com | **Error! Filename not specified.** www.trustwell.com |
| **Error! Filename not specified.** www.esha.com | **Error! Filename not specified.** www.foodlogiq.com |

**Error! Filename not specified.**

**From:** Becki Holmes <[becki@foodwit.com](#)>
**Date:** Thursday, August 22, 2024 at 1:39 PM
**To:** Katy Jones <[kjones@trustwell.com](#)>
**Subject:** Re: Follow Up

Katy,

Given the matter was already escalated to legal counsel, it would be best for the attorneys to handle any additional communication.

Best,

Becki

On Tue, Aug 20, 2024 at 7:00 PM Katy Jones <[kjones@trustwell.com](#)> wrote:

> Becki,
>
> We received your response from our cease-and-desist letter, and I am following up to schedule time to review that response and several issues we do not feel have been resolved. I am traveling the end of this week but am open 8/26 at 2:00 PM ET or 8/27 at 1:00 PM ET. If none of those times work for you, please pass along alternative options.



**Katy Jones**
Chief Executive Officer, Trustwell

| **Error! Filename not specified.** 919.883.7848 | **Error! Filename not specified.** kjones@trustwell.com | **Error! Filename not specified.** www.trustwell.com |
| **Error! Filename not specified.** www.esha.com | **Error! Filename not specified.** www.foodlogiq.com |

**Error! Filename not specified.**

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they

may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

# EXHIBIT 27



---

**Re: Follow Up**
1 message

---

**Becki Holmes** <becki@foodwit.com>                                                                    Thu, Feb 6, 2025 at 5:04 AM
To: Katy Jones <kjones@trustwell.com>

Katy,

In response to your email of January 18, we cannot agree to the conditions you seek to impose on us, which are neither fair to Foodwit nor likely to help us reach a mutually acceptable resolution.

I appreciate your willingness to discuss the matters between us, and, as I have explained before, we are willing to work with you on a process that would be fair to both Trustwell and Foodwit. Under the proposed process we discussed, Trustwell would tell us what specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell, and provide confirmation that, if the Workbench product did not include any of those specific aspects, Trustwell would not further pursue legal action and we could both move forward with our businesses. That process would give us what we want, which is an assurance that you're seeking to protect your rights instead of fishing for litigation or seeking to steal our intellectual property. And it would give you what you say you want, which is the chance to confirm that we haven't violated any obligations to Trustwell, which I assure you we have not. Back on November 14th of last year, you said in an email that you were compiling a list of specific items that you would like to review, but you never sent us this list and later confirmed that you refused to do so, returning to moving the target and threatening litigation.

Unfortunately, the proposal in your January email is not fair to both sides. You propose to put in writing that you will not sue us if, in your subjective opinion, you conclude that there is no reason to sue us. But that is always true, so writing it down provides no further assurance. You suggest giving us the script for a demonstration in advance, but that too gives us nothing. Our concern is not with the details of what a demonstration would cover, but with Trustwell's purpose in seeking the demonstration to begin with. We have repeatedly asked for specific allegations of wrongdoing, and you have repeatedly declined to provide them. Without those specifics, we have no assurances regarding why you want to see Workbench in the first place; for all we know, you want to review Workbench to steal Foodwit's intellectual property. We have pointed this out several times, but Trustwell has never provided an explanation for its refusal.

We have also told you several times, and I now repeat, that we designed Workbench using our own proprietary database schema, and incorporating data from sources other than Trustwell, such as the USDA SR-28 database. As you know, we never had access to any Genesis database schema so there is no way we could have copied that. And I would hope that Trustwell does not claim to own the U.S. government's public database. In response to our specifics, you have never explained what you think we did take from you, or how we could have done so.

We remain willing to work with you on a path to resolution that is fair to both of us. Unfortunately, since your email stated that you would proceed with litigation if we did not meet your unilateral conditions by this week, I should address that possibility as well. Simply put: you do not have a valid basis to sue us. Your threats of litigation are part of a troubling pattern in which, following its acquisition by private equity, Trustwell seeks to use litigation or the threat of litigation to eliminate any possible competition for its products. One example of this pattern is your threats to us. Another is your litigation against Cronometer. There may be more examples of this pattern that discovery will reveal. Although we hope that litigation does not occur, if it does, the courts will examine and determine not only the claims you choose to bring, but also whether Trustwell is improperly seeking a monopoly by pressing specious claims.

Thank you again for your time in talking through these issues. We believe that both Trustwell and Foodwit can thrive in a fair marketplace, and we hope that you can agree.

Becki

On Sat, Jan 18, 2025 at 2:28 PM Katy Jones <kjones@trustwell.com> wrote:

> Becki,
>
> Thank you again for your time this week to discuss our path forward. I have given our conversation a lot of thought this week and remain committed to working with Foodwit to address our issues. In order to move forward, we are willing to do the following:
>
> - Provide an advanced copy of the script on what we would like Foodwit to demo.
> - Provide in writing that we will not pursue litigation if we do not find evidence of IP infringement during that demo.
>
> Our requests for resolution remain the same:
>
> - Schedule a demo session to assess your product's functionality and data to help us determine whether it contains elements covered by Trustwell's IP.
>
> - Review of software change logs (no code) for the removal of any features removed between August 1, 2024, and the date we receive the logs.
>
> As I reiterated on Monday, our intent is to verify your claims that you did not infringe upon Trustwell's IP when you built a competitive product to Genesis while under contract with Trustwell. We have been going back and forth on these requests for months now and need to align on a timeline to resolution. I believe you said that you were traveling this week, so we are going to provide you with a deadline of February 7th to schedule the demo. If you do not schedule the session to take place prior to February 7th, we will unfortunately have to move forward with filing litigation. I look forward to your response.
>
>
> Katy



**Katy Jones**
**Chief Officer Executive, Trustwell**

📱 919.883.7848    ✉ kjones@trustwell.com    🌐 www.trustwell.com

◉ www.esha.com    ◉ www.foodlogiq.com

---

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Friday, January 10, 2025 at 5:31 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Thanks, Katy.  A meeting invite has been set for Monday.  Talk to you then.

Becki

On Fri, Jan 10, 2025 at 3:06 AM Katy Jones <kjones@trustwell.com> wrote:

> Monday at 8:30 am ET works for me!
>
> ---
>
> **From:** Becki Holmes <becki@foodwit.com>
> **Sent:** Thursday, January 9, 2025 2:22:58 PM
> **To:** Katy Jones <kjones@trustwell.com>
> **Subject:** Re: Follow Up
>
>
> Katy,
>
>
> Hope you had a nice holiday and that your new year is off to a good start.  This week has filled up quickly with the new year kicking off, and some key team members on holiday. I'm also preparing for upcoming travel in the next two weeks. If you're free to connect this week or early next, I have the following availability:
>
> - Tomorrow - 8:00 AM ET
> - Monday, 8:00 AM ET or 8:30 AM ET
>
> Please let me know if either times work for you or feel free to propose alternatives.
>
> Becki
>
>
> On Tue, Dec 31, 2024 at 7:12 PM Katy Jones <kjones@trustwell.com> wrote:
>
>> No apologies needed at all. I have been doing the same here 😊
>>
>>
>> I am sorry you feel we have taken a step back but the requests we have put forward are to provide us with verification of your counter claims, not to bolster our own. The fact that we're willing to engage in this exercise should demonstrate to you that we're not simply looking to file suit.  We could have filed months ago if we were only interested in litigation. I am solely interested in protecting Trustwell IP and for obvious reasons, we can't share the scenarios we want to demo before the demo.  That would defeat the purpose.
>>
>>
>> For the change logs, we don't need to review source code (we don't store code in our JIRA tickets). We simply need a description of features that have been removed or changed since August. If you are using JIRA, it would be a simple search and then limiting the fields to show only title, description, created/updated date.
>>
>>
>> I am happy to jump on another call next week but what we have outlined is our requirement to resolve this matter without litigation.
>>
>>
>> Katy

**Katy Jones**
Chief Executive Officer, Trustwell

919.883.7848    kjones@trustwell.com    www.trustwell

www.esha.com    www.foodlogiq.com

Image removed by sender. App Banner Image

Image removed by sender. __tpx__

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Friday, December 20, 2024 at 3:41 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy:

Thanks for your email of last Friday, December 13. I am spending a lot of time this week and next week with my family, so apologies for responding more slowly than I otherwise would. I hope you are able to spend time with your family as the end of the year approaches.

I worry that we have moved backwards from our phone call of November 11. On that call, you said you couldn't take our word that we hadn't used your IP improperly, and I responded that we also couldn't take your word that you weren't on a fishing expedition for a legal complaint. I proposed a solution, which my lawyer also proposed to your lawyer in October: Trustwell can tell us what specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell, and provide confirmation that, if the Workbench product does not include any of those specific aspects, Trustwell will not further pursue legal action, and we can move forward with our businesses. That way no one has to take anyone's word for anything: we can confirm that you're not on a fishing expedition, and you can confirm that we haven't violated any obligation to you. You seemed receptive to this idea, and said you would go back to your team to figure out specifics.

Unfortunately, your email of December 13 returned to generalities. You proposed to "assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP," including "verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data." As you know, that could be anything. You must know what you want to know, but you won't tell us what that is, and you are asking us to take your word for it. As I said on our November call, if we're taking each other's word, you can take my word for it that we have not violated any obligation to Trustwell, and we can go have nice holidays with our families. But you don't want to take our word for it; I can't make you, but surely you understand that the same rule must apply to both Foodwit and Trustwell. We remain willing to work out a plan in which nobody takes anyone's word for anything, as I've described above. But we can't agree that you needn't take our word, but we must take yours. I hope you reconsider our proposal.

That brings me to your second request, which also seems like a step backwards from our November 11 call. On that call, you noted several times that you were not seeking our source code, and that you understood why we should not provide it. But in your December 13 email you asked for "software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs," which you said was not "access or review of your actual software code." As you know, however, software change logs contain source code, often substantial amounts of it, making your December request a step backward from our November phone call, and significantly more intrusive than you and I agreed any request should be. I hope you will reconsider this request as well.

I want to raise one final point, because I would like for you to understand as fully as possible why we worry that you are not looking to ensure fair competition between us, but instead are on a fishing expedition. You state in your email that the purpose of your second request is to "ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist." None were, but that's not the point: this request seems intended to lead only to litigation. Assume for the moment that in August our Workbench product included a feature that you contend is improper, and that we removed that feature between August and now. (Again, we didn't, but assume we did.) It seems to us that, if your goal were to prevent improper use of your IP, you wouldn't care whether a feature was in the product in August, and would just be happy that it wasn't there now. As far as we can see, the only reason you would care whether any feature was previously in Workbench, rather than currently, would be if you were looking for an excuse to sue us. (If there is another reason, please tell me what it is.) Think about this situation from our perspective: although we are confident that we did nothing wrong, plenty of people who did nothing wrong get sued and have to spend years in litigation. Your lawyer sent us a demand letter and then a draft complaint. Now you're asking us to trust that your motives are pure, while asking questions that only make sense if they're not.

I hope we can return to the spirit of our November 11 call. I'll be back in the office the week of January 6, and I suggest that you and I have another one-on-one call to discuss these issues further. I hope that we can work together to come up with a solution that is fair to everyone, and provides both of us with the assurances we need to move forward. Until then, I hope that you have a lovely and restful holiday season.

Becki

On Fri, Dec 13, 2024 at 9:52 PM Katy Jones <kjones@trustwell.com> wrote:

Looping in Doug Bell, our CTO, and Todd Dolinsky, our CPO, on the thread.

Error! Filename not specified.

**Katy Jones**
Chief Executive Officer, Trustwell

Error! Filename not specified.  919.883.7848    Error! Filename not specified.  kjones@trustwell.com    Error! Filename not specified.  www.trustwell.com

Error! Filename not specified.  www.esha.com    Error! Filename not specified.  www.foodlogiq.com

Error! Filename not specified.

**Error! Filename not specified.**

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Friday, December 13, 2024 at 3:49 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,

Thank you for your patience as we circle back on this issue. To ensure we can collaboratively and efficiently move forward to resolve these issues, we would like to do the following:

1. Schedule a 45-minute session to assess your product's functionality and data handling practices to help us determine whether it may contain elements covered by Trustwell's IP.

   Please let us know your availability for a session during one of the following time slots:

   · Monday, January 6th 8 AM – 10:30 ET
   · Tuesday, January 7th 8 AM – 10:30 ET

   The session with include me and our Chief Product Officer Todd Dolinsky. If these options don't work, feel free to suggest alternative times that suit your schedule.

   Immediately preceding the scheduled session, we will send over a short demo scenario script to facilitate further clarification and review. The scenarios, which should take no more than 30 minutes to review, will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data.

2. We request a review of your software change logs for the removal of any features removed between August 1, 2024, and the date we receive the logs. This review is to ensure that no features violating Trustwell's intellectual property were removed from the software following the receipt of our cease and desist. We do not need any access or review of your actual software code. I have copied in our CTO who can coordinate the review, either live with a member of your engineering team or exports from your JIRA instance (or similar engineering management platform).

We look forward to your response and appreciate your cooperation in resolving this matter.

**Error! Filename not specified.**

**Katy Jones**
**Chief Product Officer, Trustwell**

**Error! Filename not specified.** 919.883.7848   **Error! Filename not specified.** kjones@trustwell.com   **Error! Filename not specified.** www.trustwell.com

**Error! Filename not specified.** www.esha.com   **Error! Filename not specified.** www.foodlogiq.com

**Error! Filename not specified.**

**Error! Filename not specified.**

**From:** Katy Jones <kjones@trustwell.com>
**Date:** Thursday, November 14, 2024 at 3:06 PM
**To:** Becki Holmes <becki@foodwit.com>
**Subject:** Re: Follow Up

Becki,

Thank you again for the time earlier this week to discuss our issues related to protection of Trustwell's trade secrets. I met with our counsel the week and wanted to follow up on next steps.

We are now compiling a list of specific items we would like to review within your product to help us determine whether it may contain elements covered by Trustwell's IP. This list will focus on verifying the uniqueness of certain Genesis features and proprietary Trustwell nutrition data. Once we have that list finalized, I will circle back again with next steps on the process and approach for verification using that list.

Thank you for keeping the lines of communication open as we work through this process. Please let me know if you have any immediate questions.



**Katy Jones**
**Chief Executive Officer, Trustwell**

Error! Filename not specified. 919.883.7848   Error! Filename not specified. kjones@trustwell.com   Error! Filename not specified. www.trustwell.com

Error! Filename not specified. www.esha.com   Error! Filename not specified. www.foodlogiq.com

**Error! Filename not specified.**

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, October 31, 2024 at 8:46 AM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Thanks for the voicemail.  As a point of info, I'm based in Zurich (CET). Tomorrow is a public holiday; could we find some time next week?

Here's a link to my schedule to schedule something. Safe travels and looking forward to speaking with you.

Becki

On Mon, Oct 28, 2024 at 11:06 AM Katy Jones <kjones@trustwell.com> wrote:

Becki,

Reaching out to acknowledge your call last week. I was travelling internationally but am back today and will return your call. I look forward to connecting.



**Katy Jones**
**Chief Executive Officer, Trustwell**

Error! Filename not specified. 919.883.7848   Error! Filename not specified. kjones@trustwell.com   Error! Filename not specified. www.trustwell.com

Error! Filename not specified. www.esha.com   Error! Filename not specified. www.foodlogiq.com

**Error! Filename not specified.**

**From:** Becki Holmes <becki@foodwit.com>
**Date:** Thursday, August 22, 2024 at 1:39 PM
**To:** Katy Jones <kjones@trustwell.com>
**Subject:** Re: Follow Up

Katy,

Given the matter was already escalated to legal counsel, it would be best for the attorneys to handle any additional communication.

Best,

Becki

On Tue, Aug 20, 2024 at 7:00 PM Katy Jones <kjones@trustwell.com> wrote:

Becki,

We received your response from our cease-and-desist letter, and I am following up to schedule time to review that response and several issues we do not feel have been resolved. I am traveling the end of this week but am open 8/26 at 2:00 PM ET or 8/27 at 1:00 PM ET. If none of those times work for you, please pass along alternative options.

**Error! Filename not specified.**

**Katy Jones**
**Chief Executive Officer, Trustwell**

Error! Filename not specified.  919.883.7848   Error! Filename not specified.  kjones@trustwell.com   Error! Filename not specified.  www.trustwell.com

Error! Filename not specified.  www.esha.com   Error! Filename not specified.  www.foodlogiq.com

Error! Filename not specified.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

**Caution:** This email originated from outside of Trustwell. Please exercise caution when opening attachments or clicking links, as they may not be safe or secure.

# EXHIBIT 28

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ESHA RESEARCH, LLC, now known as TRUSTWELL, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. |
| | ) | **JURY TRIAL DEMANDED** |
| | ) ) | |
| RLH ASSETS, LLC d/b/a FOODWIT; and DOES 1-20, | ) ) ) | |
| | ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1.      Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell"), brings this complaint against Defendant RLH Assets, LLC, doing business as Foodwit ("Foodwit," and collectively with Trustwell, the "Parties"), for injunctive relief and monetary damages as well as such other relief as specified herein, as follows:

## INTRODUCTION

2.      This case is about the calculated theft of Trustwell's crown jewels—the gold-standard software system called Genesis Foods, which, among other things, automates processes for food and supplement formulation, labeling calculations, and regulatory compliance—that, on information and belief, Foodwit secretly accessed and used to help build and launch a competing product called Workbench.  Foodwit recently announced the creation and launch of Workbench, which it touts as a "world-class compliance solution" that "features integrated compliance checks and workflows to validate compliance, formulation, claim and labeling data."

3.      Trustwell, a leading SaaS provider to the food and supplements industries, first introduced its Genesis Foods software system to customers in 1991, enabling companies to formulate foods virtually, create government-compliant nutrition panels and labels, and analyze the nutritional content of recipes, among a host of other functions.  Trustwell has continually updated and improved its Genesis Foods system over the years.  In 2024, Trustwell launched the next generation of the system, providing a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance, including U.S., Mexico, Canada, Australia, New Zealand, and European Union food labeling requirements and guidelines.  The new platform features a streamlined user interface offering fast and intuitive product formulation and data entry while assisting users with regulatory compliance through built-in, automated data checks and alerts.  It also automates the process of labeling calculations, making it easy for companies to create new product formulations within minutes and make real-time changes to existing recipes.

4.      Genesis Foods is backed by Trustwell's industry-leading food and ingredient database, which is embedded in the platform and includes, among other things, comprehensive nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,000 brand name and generic foods and ingredients.  The database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available.  This proprietary, confidential, and trade secret software system and related database (collectively, the "Trade Secrets"), developed through decades of investment in research and development, is widely recognized as the gold-standard for food and nutrition research and development and regulatory compliance.

5.      In 2017, Foodwit approached Trustwell to request a license to access and use the Genesis Foods system for its own internal business use.  Trustwell entered into a limited-use license agreement with Foodwit (the "License Agreement"), which the Parties renewed annually. The License Agreement does not authorize Foodwit to commercialize Trustwell's Trade Secrets or otherwise leverage them to help build and launch a competing product.  Nevertheless, on information and belief, Foodwit secretly accessed and used those materials to build and launch Workbench.

6.      Trustwell learned of Foodwit's scheme in mid-2024.  Trustwell promptly sent Foodwit a cease-and-desist letter, demanding, among other things, that Foodwit immediately "[t]erminate all use by Foodwit of Trustwell's nutritional data and related information and software, including its database, to develop, launch, or support any products that compete, directly or indirectly, with Trustwell;" and to "[p]rovide a complete accounting of all marketing and sales conducted by Foodwit utilizing or relying on Trustwell's nutritional data and related information and software, including its database."

7.      Foodwit responded by dismissing the cease-and-desist letter as nothing more than a "bullying tactic" and baldly denying any misconduct.  However, despite multiple attempts by Trustwell over several months to resolve this dispute informally, Foodwit repeatedly refused to provide any substantiation of its denials.  To date, Foodwit has refused to comply with Trustwell's demands.  This action follows.

**PARTIES**

8.      ESHA Research, LLC was founded in Oregon in 1981.  After merging with another business in 2022, the company rebranded as Trustwell.  Plaintiff Trustwell is a privately held limited liability company based in, and with its principal place of business located in, Beaverton, Oregon.  Trustwell's parent company is based and registered in Delaware.

3

9.       On information and belief, Defendant Foodwit is a privately held limited liability company based in, and with its principal place of business located in, Salem, Oregon.

## JURISDICTION AND VENUE

10.       This Court has original jurisdiction over Trustwell's claims pursuant to 28 U.S.C. §§ 1331 and 1367(a).  Alternatively, this Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy and derive from a common nucleus of operative facts as Trustwell's federal claims.

11.       The Parties expressly consented to this Court's personal jurisdiction over them pursuant to section 23 of the License Agreement, which states as follows:

> The parties agree that any suit, action, or arbitration proceeding arising out of or relating to this [License] Agreement shall be brought in and the parties expressly consent to the exclusive jurisdiction of the courts of the state of Delaware.

Moreover, as set forth below, Foodwit possesses the requisite minimum contacts with Delaware.

12.       Venue is proper in this judicial district pursuant to the Parties' express agreement in section 23 of the License Agreement.  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) & (c).

## FACTS

13.       In 2017, Foodwit, a start-up company at the time, first approached Trustwell to request a license to access and use its Genesis Foods software system.  Based on Foodwit's representation that it would use Genesis Foods solely for its own internal business use, Trustwell entered into the limited-use License Agreement with Foodwit.  The Parties renewed the License Agreement annually for several years.  The Parties most recently renewed the License Agreement

as of August 30, 2023, and it expired on August 29, 2024.  Foodwit has described itself as a

"super user" of Genesis Foods, accessing and using it on a daily basis.

14.     Section 3 (Limitations on License) of the License Agreement provides, in

pertinent part, as follows:

> Licensee may use the Licensed Software solely for its internal
> business use ….  The Licensee is not licensed to do any of the
> following: (a) copy, sublicense, rent, lease, lend or otherwise
> transfer, disclose or publish the Licensed Software (or any portions
> thereof), or in any manner transfer or assign Licensee's rights under
> this Agreement without the prior written consent of ESHA; (b) use
> the Licensed Software for any purpose other than the purposes
> specifically licensed herein; (c) use the Licensed Software for the
> benefit of third parties or as part of its own commercially licensed
> products or services; (d) remove or obscure the ESHA copyright or
> trademark notices, or those of applicable Third Party Vendors,
> appearing on or with the Licensed Software; (e) compile the
> Licensed Software from one form to another or attempt to interfere
> with, disable, modify, convert, reverse engineer, reverse compile,
> change or reverse assemble it; [and] (f) compile, extract, strip, mine,
> harvest or otherwise collect, directly or indirectly, the data from the
> nutritional database embedded within the Licensed Software.

15.     Section 6 (Ownership, Copyrights) of the License Agreement provides, in

pertinent part, as follows:

> ESHA is the sole owner of all rights, title, and interest in the ESHA
> Software, including the embedded nutritional and regulatory
> database(s) and all customized and derivative works based upon
> them, and including all copies thereof and all copyright, patent,
> trademark, trade secret rights and other intellectual property rights
> embodied therein.

16.     Section 7 (Licensee's Obligations to Protect the Licensed Software) of the License

Agreement provides as follows:

> As a continuing condition of the licenses granted herein, Licensee
> covenants to use the Licensed Software only for the purposes set
> forth in this Agreement and for no other purpose and shall use
> commercially reasonable efforts to protect the Licensed Software
> from unauthorized use, reproduction, publication, or distribution.

17.    Section 13 (Confidential Information) of the License Agreement provides, in

pertinent part, as follows:

> The Licensed ESHA Software (including the nutritional and
> regulatory database information embedded therein) and all other
> information ESHA discloses to Licensee in connection with them,
> shall be considered ESHA's Confidential Information, which ESHA
> discloses only subject to this Agreement.  Licensee agrees that it and
> its employees, agents and representatives shall, except as permitted
> herein: (i) keep ESHA's Confidential Information strictly
> confidential, and shall not disclose such information to any other
> person or entity without the express written consent of ESHA; (ii)
> limit internal disclosure of the Confidential Information solely to its
> employees, agents and representatives who must be apprised of the
> Confidential Information to advance the purposes of this
> Agreement, and only to the extent that they must be apprised for
> those purposes; (iii) contractually bind all such persons to honor the
> confidentiality and use restrictions imposed upon the Licensee; (iv)
> use the Confidential Information solely for the purpose of using the
> Licensed Software as licensed by ESHA in this Agreement; and (v)
> upon demand, immediately surrender to ESHA the Confidential
> Information and all notes, records, documentation, models,
> software, databases and other items or materials containing such
> Confidential Information.

18.    Section 18 (Remedies) of the License Agreement provides, in pertinent part, as

follows:

> The parties agree that in the event of a breach of any of the covenants
> pertaining to ESHA's intellectual property rights or Confidential
> Information, such a breach will result in irreparable and continuing
> damage in an amount which is not readily ascertainable and for
> which there will be no adequate remedy at law.  In the event of any
> breach of such covenants, ESHA shall be entitled to injunctive relief
> and such other and further relief, including damages, as may be
> provided by law.

19.    Section 22 (Governing Law) of the License Agreement provides that it "shall be

governed by and construed in accordance with the laws of the state of Delaware without regard

to, or application of, any conflict of law provisions."

20.    As mentioned above, Trustwell first introduced its Genesis Foods software system

to customers in 1991, enabling companies to formulate foods virtually, create government-

compliant nutrition panels and labels, and analyze the nutritional content of recipes, among a host

of related functions.  Through decades of investment in research and development, Trustwell has continually updated and improved the system.  In 2024, Trustwell launched the next generation of Genesis Foods, providing a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance, including U.S., Mexico, Canada, Australia, New Zealand, and European Union food labeling requirements and guidelines.  While concept work for the new platform began several years before, coding work began in earnest in 2021.  In 2023, Foodwit received a confidential presentation regarding planned upgrades to the platform, including the new user interface.  The new platform features a streamlined user interface offering fast and intuitive product formulation and data entry while assisting users with regulatory compliance through built-in, automated data checks and alerts, and is supported by Trustwell's industry-leading and proprietary food and ingredient database.  The platform also automates the process of labeling calculations, making it easy for companies to create new product formulations within minutes and make real-time updates to existing recipes.

21.     Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means.  Indeed, Genesis Foods is widely recognized as the gold-standard system for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance.  By licensing access to and use of its Trade Secrets, including Genesis Foods, subject to strict terms, conditions, and protections, Trustwell generates revenue and income through licensing fees.  Such licensing represents a substantial portion of Trustwell's business.

22.     Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.  For example, Trustwell provides its customers access to such information solely pursuant to agreements that contain confidentiality provisions and other protections substantially similar to those contained in the License Agreement.  Moreover, Trustwell uses electronic, physical, and

other security measures to maintain the secrecy of such information maintained in its secure facilities, such as password protections, firewalls, and other technical mechanisms. Trustwell also executes confidentiality agreements with employees, and tracks and limits employee access to such information, providing it only to the extent necessary to perform their job functions. Trustwell also regularly instructs and repeatedly reminds its employees of the highly sensitive and confidential nature of its Trade Secrets, which must be protected at all times from disclosure to third parties.

23.     Over a period of several months in 2022 and 2023, Foodwit engaged in discussions with Trustwell's Delaware parent company regarding a potential investment in or acquisition of Foodwit by Trustwell's parent company. Over the course of those discussions, Foodwit's founder and majority owner, Becki Holmes, revealed that Foodwit is a "super user" of Genesis Foods, utilizing it on a daily basis. In fact, Foodwit evidently relied so heavily on Genesis Foods that one of the required qualifications for certain positions was listed as "[p]roficiency in [Trustwell] Genesis nutrient analysis software." Ms. Holmes mentioned that she did not believe there were viable competitors to Genesis Foods in the market because of its unique and powerful regulatory compliance tools. She added that, because of her extensive experience with Genesis Foods, she had unique insight into what "is working / not working" with the platform. She claimed, however, that Foodwit had a greater industry reach than Trustwell, suggesting that if Foodwit replicated the Genesis Foods system, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach. Trustwell's parent company did not invest in or acquire Foodwit.

24.     In 2024, Trustwell launched the next generation of Genesis Foods. Pursuant to the terms, conditions, and protections of the limited-use License Agreement, Foodwit accessed and used the new Genesis Foods system. However, on information and belief, Foodwit secretly

accessed and used the new Genesis Foods system to help design and build Workbench, and exported a substantial volume of proprietary data from Genesis Foods for that purpose. In fact, Ms. Holmes made sure to confirm before renewing the License Agreement for the final time that "API / Import / Export functionality [would be] included." Foodwit subsequently announced the creation and launch of Workbench, which Foodwit describes as a "world-class compliance solution" that "features integrated compliance checks and workflows to validate compliance, formulation, claim and labeling data."

25.     Trustwell has reviewed publicly available information, including screenshots and other information, regarding the features and functionalities of Workbench. On information and belief, Workbench is based on and derived from Genesis Foods with respect to at least a large number of features and functionalities, including but not limited to the following:

- Build and scale recipes from ingredients;

- Analyze real-time formula impact to nutrient, ingredient, and allergen profiles;

- Integrated regulatory compliance checks;

- Automated alerts for regulatory compliance issues;

- Automated alerts based on ingredients for things like allergens;

- SaaS-based application;

- Look and feel of the user interface;

- Ingredient statement with manual override;

- Ingredient standard of identity;

- Listing of standard and non-standard nutrients;

- Nutrient fact panel displayed with recipe formulation;

- Reporting and downloadable print production assets (labels); and

- Upload documents per recipes.

This is not surprising given that Foodwit accessed and used Genesis Foods on a daily basis and, on information and belief, exported a substantial volume of proprietary data from it while simultaneously developing and building Workbench. Indeed, it appears that Foodwit and Ms. Holmes essentially duplicated at least substantial portions of Genesis Foods.

26.     Foodwit makes the following additional representations, among others, regarding Workbench on its website:

- "Engineered by food and supplement industry veterans;"

- "Go-to-market more quickly with built-in compliance analyses, document management, reporting and downloadable production-ready label assets;"

- "See real-time formula impacts to nutrient, ingredient and allergen profiles;"

- "[B]uilt-in compliance analyses for food regulations;"

- "Trusted by leading brands;"

- "Workbench … is a breakthrough for compliance software in the food and beverage industry, offering unmatched compliance and efficiency;" and

- "[I]t's a revolution in managing compliance, offering real-time nutrient evaluation and allergen compliance with the peace of mind that regulatory experts have validated its methods."

27.     At least substantial portions of the Workbench software system that Foodwit advertises and repeatedly touts on its website as, among other things, a "breakthrough," a "revolution," and "world-class" appear to be, in fact, Trustwell's Trade Secrets, access to which was provided to Foodwit solely pursuant to the limited-use License Agreement. Foodwit omits that it secretly leveraged Trustwell's Trade Secrets to design and build Workbench. Foodwit also omits that, by doing so, it avoided decades of investment in research and development and

thereby gained access to valuable technology and markets without commensurate investment. On information and belief, Foodwit knew it could not afford the investment—in time or money— necessary to develop legitimately a software system that could compete with Genesis Foods; Foodwit resorted to misappropriation to quickly and cheaply create a competitive product. In so doing, Foodwit also relieved itself of its heavy reliance on Genesis Foods. It no longer had to license Genesis Foods because it essentially duplicated the system.

28.     At no point did Trustwell ever authorize Foodwit to access, use, or disclose its Trade Secrets in any way beyond the terms and conditions of the limited-use License Agreement. Trustwell has never and would never knowingly provide access to its Trade Secrets to enable a company to commercialize or otherwise leverage those materials to help build competitive and valuable product lines with virtually no investment. On information and belief, Foodwit failed even to provide proper attribution, as required by section 6 of the License Agreement. In other words, on information and belief, through the above representations and omissions, as well as numerous others on its website and elsewhere, Foodwit falsely and deceptively marketed, and continues to falsely and deceptively market, Trustwell's crown-jewel Trade Secrets as Foodwit's own creation, the result of Foodwit's own honest, hard work.

29.     In response to Trustwell's cease-and-desist letter, which Foodwit promptly dismissed as nothing more than a "bullying tactic," Foodwit baldly denied any misconduct. Trustwell's CEO immediately reached out to Ms. Holmes directly, in an attempt to resolve this dispute informally. Ms. Holmes rebuffed the attempt, responding that "it would be best for the attorneys to handle any additional communication." Trustwell nevertheless spent the next several months attempting to discuss with Foodwit ways in which it could substantiate its denials, in a concerted effort to resolve the dispute short of litigation. Trustwell proposed a trust-but-verify approach that required substantiation. Unfortunately, Foodwit rejected each of Trustwell's

proposals and ultimately refused to provide any substantiation whatsoever.  Foodwit insisted that Trustwell trust but *not* verify.  Given the substantial identity between the two systems, however, as well as Foodwit's export history and comments about replicating the Genesis Foods system, Trustwell was unwilling to blindly trust Foodwit's unsupported denials.

30.     Foodwit's limited-use License Agreement expired on August 29, 2024.  Of course, Foodwit has no further need for Genesis Foods given that it appears to have copied for its own use at least substantial portions of Trustwell's system.  On information and belief, Foodwit's repeated but slow-rolled rejections of Trustwell's proposals to substantiate Foodwit's denials of misconduct were meant to delay and obstruct this lawsuit and minimize publicly available information about Workbench so as not to reveal even more substantial similarities with Genesis Foods, demonstrating the malicious and oppressive nature of Foodwit's continuing misconduct.

31.     When Foodwit repeatedly refused to comply with Trustwell's demands, Trustwell's only available recourse, and only available means to protect its Trade Secrets, was to file suit.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

32.     Trustwell hereby incorporates by reference paragraphs 1 through 31, inclusive, as if set forth fully herein.

33.     As set forth above, Foodwit entered into the limited-use License Agreement with Trustwell in 2017, renewing it annually until it expired in 2024.  Trustwell provided Foodwit access to and use of Genesis Foods and related information pursuant to the terms, conditions, and protections of the License Agreement.

34.     By using Genesis Foods and related information as described above, and by refusing to comply with Trustwell's demands, Foodwit has breached and continues to breach at least sections 3, 6, 7, and 13 of the License Agreement.

35.     As a direct and proximate result of Foodwit's breaches, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of attorneys' fees pursuant to section 24 of the License Agreement, which provides, in pertinent part, that "[i]f either party to this Agreement breaches any term of this Agreement, then the other party shall be entitled to recover all expenses of whatever form or nature, costs, and attorneys' fees reasonably incurred to enforce the terms of the Agreement, whether or not suit is filed."

## SECOND CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq.*)

36.     Trustwell hereby incorporates by reference paragraphs 1 through 35, inclusive, as if set forth fully herein.

37.     Trustwell owns and possesses its Trade Secrets.  As set forth above, Trustwell granted Foodwit access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the limited-use License Agreement.

38.     As set forth above, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and launch Workbench.

39.     As set forth above, and on information and belief, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets to market and sell Workbench to the

same types of customers who presently utilize Genesis Foods, in an effort to divert such customers and business away from Trustwell and to Foodwit.

40.     As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

41.     As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means. Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, as they have to Foodwit.

42.     As set forth above, Foodwit willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for their own competitive use and for their own financial benefit.

43.     On information and belief, and as set forth above, Foodwit, including through its founder and majority owner, Ms. Holmes, intentionally, knowingly, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

44.     On information and belief, and as set forth above, Foodwit is still in possession of, and continues to use and disclose, Trustwell's Trade Secrets; thus, if Foodwit's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

45.     Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its Trade Secrets and other legitimate business interests. Moreover, as set forth above, Foodwit's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to

prevent such future misconduct. Therefore, Trustwell also seeks an order under 18 U.S.C. § 1836(b)(2) for the seizure of any and all of Trustwell's Trade Secrets and confidential or proprietary information in the possession, custody, or control of Foodwit.

46. As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

## THIRD CAUSE OF ACTION

### FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))

47. Trustwell hereby incorporates by reference paragraphs 1 through 46, inclusive, as if set forth fully herein.

48. As set forth above, Foodwit misappropriated Trustwell's confidential, proprietary, and trade secret Genesis Foods software system and related information to build, market, and launch its competing product, Workbench, to customers across the country. In the process, and as set forth above, Foodwit has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of Workbench, including its features and functionalities, which were built using Trustwell's stolen materials.

49. On information and belief, and as set forth above, Foodwit's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), who would not seek to purchase or license Workbench if they knew the truth, and instead likely would do business (or continue to do business) with Trustwell.

50.     As set forth above, Foodwit's falsely-represented product, Workbench, is marketed and sold across the country and travels in, and has a substantial effect on, interstate commerce.

51.     As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of treble damages and attorneys' fees.

## FOURTH CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS UNDER THE DELAWARE UNIFORM TRADE SECRETS ACT (6 DEL. CODE ANN. § 2001, *et seq.*)

52.     Trustwell hereby incorporates by reference paragraphs 1 through 51, inclusive, as if set forth fully herein.

53.     As set forth above, Trustwell owns and possesses its Trade Secrets. Trustwell granted Foodwit access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the limited-use License Agreement.

54.     As set forth above, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and launch Workbench.

55.     As set forth above, and on information and belief, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets to market and sell Workbench to the same types of customers who presently utilize Genesis Foods, in an effort to divert such customers and business away from Trustwell and to Foodwit.

56.     As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

57.      As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means.  Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, and they have to Foodwit.

58.      As set forth above, Foodwit willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for its own competitive use and for its own financial benefit.

59.      On information and belief, and as set forth above, Foodwit, including through its founder and majority owner, Ms. Holmes, intentionally, knowingly, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

60.      On information and belief, and as set forth above, Foodwit is still in possession of, and continues to use and disclose, Trustwell's Trade Secrets; thus, if Foodwit's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

61.      Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests.  Moreover, as set forth above, Foodwit's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to prevent such future misconduct.  Therefore, Trustwell also seeks an order under 6 Del. Code Ann. § 2002(c) for the seizure of any and all of Trustwell's Trade Secrets in the possession, custody, or control of Foodwit.

62.     As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

## FIFTH CAUSE OF ACTION

## DECEPTIVE TRADE PRACTICES UNDER THE DELAWARE DECEPTIVE TRADE PRACTICES ACT (6 DEL. CODE ANN. § 2531, *et seq.*)

63.     Trustwell hereby incorporates by reference paragraphs 1 through 62, inclusive, as if set forth fully herein.

64.     As set forth above, Foodwit misappropriated Trustwell's confidential, proprietary, and trade secret Genesis Foods software system and related information to help build, market, and launch Workbench, a competing product, to customers across the country.  In the process, as set forth above, Foodwit has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of Workbench, including its software and source data, which was built using Trustwell's stolen materials, in violation of at least sections 2532(a)(1), (2), (5), and (12) of Title 6 of the Delaware Code Annotated.

65.     On information and belief, and as set forth above, Foodwit's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), who would not seek to purchase or license Workbench if they knew the truth, and instead likely would do business (or continue to do business) with Trustwell.

66.     As set forth above, Foodwit's falsely-represented Workbench is marketed and sold across the country and travels in, and has a substantial effect on, interstate commerce.

67.     As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of punitive damages and attorneys' fees.

## JURY TRIAL DEMAND

68.     Trustwell respectfully requests a jury trial in this action on all issue so triable.

## PRAYER FOR RELIEF

Based on the foregoing, Trustwell prays for the following relief against Foodwit:

1.      Judgment in Trustwell's favor and against Foodwit on all causes of action alleged herein;

2.      A preliminary and permanent injunction to enjoin Foodwit, its agents, representatives, employees, attorneys, successors, and assigns, and all persons and entities acting in concert with them, from further misappropriation or unauthorized use of Trustwell's confidential, proprietary, and trade secret information and materials;

3.      An order for Foodwit to pay Trustwell compensatory damages based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law;

4.      An order for Foodwit to pay Trustwell consequential and actual damages or disgorgement of Foodwit's profits unjustly obtained, restitution, and/or reasonable royalties, based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law;

5.      An order for Foodwit to pay Trustwell exemplary, treble, and/or punitive damages for Foodwit's intentional, knowing, willful, malicious, fraudulent, and oppressive conduct;

6.      An order for Foodwit to pay Trustwell its reasonable attorneys' fees and allowable costs and expenses; and

7.      All other such relief to Trustwell under law and equity as the Court deems just and proper.

Dated: February 20, 2025

                                        */s/ Kenneth L. Dorsney*
                                        Kenneth L Dorsney (#3726)
                                        Cortlan S. Hitch (#6720)
                                        MORRIS JAMES LLP
                                        500 Delaware Avenue, Suite 1500
                                        Wilmington, DE 19801
                                        Telephone: (302) 888-6800
                                        kdorsney@morrisjames.com
                                        chitch@morrisjames.com

                                        *Of Counsel:*

                                        Cary D. Sullivan (*pro hac vice* to be filed)
                                        JONES DAY
                                        3161 Michelson Drive, Suite 800
                                        Irvine, CA 92612
                                        Telephone: (949) 851-3939
                                        carysullivan@jonesday.com

                                        *Attorneys for Plaintiff*
                                        *ESHA Research, LLC, now known as*
                                        *Trustwell*

# EXHIBIT 29

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESHA RESEARCH, LLC, now known as TRUSTWELL, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. ) |
| | ) **JURY TRIAL DEMANDED** ) |
| RLH ASSETS, LLC d/b/a FOODWIT; and DOES 1-20, | ) ) ) |
| Defendants. | ) ) ) ) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

### JURY TRIAL DEMANDED

1.     Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell"), brings this complaint against Defendant RLH Assets, LLC, doing business as Foodwit ("Foodwit," and collectively with Trustwell, the "Parties"), for injunctive relief and monetary damages as well as such other relief as specified herein, as follows:

## INTRODUCTION

2.     This case is about the calculated theft of Trustwell's crown jewels—the gold-standard software system called Genesis Foods, which, among other things, automates processes for food and supplement formulation, labeling calculations, and regulatory compliance—that, on information and belief, Foodwit secretly accessed and used to help build and launch a competing product called Workbench.  Foodwit recently announced the creation and launch of Workbench, which it touts as a "world-class compliance solution" that "features integrated compliance checks and workflows to validate compliance, formulation, claim and labeling data."

3.     Trustwell, a leading SaaS provider to the food and supplements industries, first introduced its Genesis Foods software system to customers in 1991, enabling companies to formulate foods virtually, create government-compliant nutrition panels and labels, and analyze the nutritional content of recipes, among a host of other functions.  Trustwell has continually updated and improved its Genesis Foods system over the years.  In 2024, Trustwell launched the next generation of the system, providing a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance, including U.S., Mexico, Canada, Australia, New Zealand, and European Union food labeling requirements and guidelines.  The new platform features a streamlined user interface offering fast and intuitive product formulation and data entry while assisting users with regulatory compliance through built-in, automated data checks and alerts.  It also automates the process of labeling calculations, making it easy for companies to create new product formulations within

2

minutes and make real-time changes to existing recipes.

~~1.~~ Genesis Foods is backed by Trustwell's industry-leading food and ingredient database, which is embedded in the platform and includes, among other things, comprehensive

4. nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,000 brand name and generic foods and ingredients. The database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available. This proprietary, confidential, and trade secret software system and related database (collectively, the "Trade Secrets"), developed through decades of investment in research and development, is widely recognized as the gold-standard for food and nutrition research and development and regulatory compliance.

5. In 2017, Foodwit approached Trustwell to request a license to access and use the Genesis Foods system for its own internal business use. Trustwell entered into a limited-use license agreement with Foodwit (the "License Agreement"), which the Parties renewed annually. The License Agreement does not authorize Foodwit to commercialize Trustwell's Trade Secrets or otherwise leverage them to help build and launch a competing product. Nevertheless, on information and belief, Foodwit secretly accessed and used those materials to build and launch Workbench.

6. Trustwell learned of Foodwit's scheme in mid-2024. Trustwell promptly sent Foodwit a cease-and-desist letter, demanding, among other things, that Foodwit immediately "[t]erminate all use by Foodwit of Trustwell's nutritional data and related information and software, including its database, to develop, launch, or support any products that compete, directly or indirectly, with Trustwell;" and to "[p]rovide a complete accounting of all marketing and sales conducted by Foodwit utilizing or relying on Trustwell's nutritional data and related

information and software, including its database."

7.       Foodwit responded by dismissing the cease-and-desist letter as nothing more than a "bullying tactic" and baldly denying any misconduct.  However, despite multiple attempts by Trustwell over several months to resolve this dispute informally, Foodwit repeatedly refused to provide any substantiation of its denials.  To date, Foodwit has ~~not complied~~refused to comply with Trustwell's demands.  This action follows.

## PARTIES

8.       ESHA Research, LLC was founded in Oregon in 1981.  After merging with another business in 2022, the company rebranded as Trustwell.  Plaintiff Trustwell is a privately held limited liability company based in, and with its principal place of business located in, Beaverton, Oregon.  Trustwell's parent company is based and registered in Delaware.

9.       On information and belief, Defendant Foodwit is a privately held limited liability company based in, and with its principal place of business located in, Salem, Oregon.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over Trustwell's claims pursuant to 28 U.S.C. §§ 1331 and 1367(a).  Alternatively, this Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy and derive from a common nucleus of operative facts as Trustwell's federal claims.

11.      The Parties expressly consented to this Court's personal jurisdiction over them pursuant to section 23 of the License Agreement, which states as follows:

> The parties agree that any suit, action, or arbitration proceeding arising out of or relating to this [License] Agreement shall be brought in and the parties expressly consent to the exclusive jurisdiction of the courts of the state of Delaware.

Moreover, as set forth below, Foodwit possesses the requisite minimum contacts with Delaware.

4

12.     Venue is proper in this judicial district pursuant to the Parties' express agreement in section 23 of the License Agreement.  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) & (c).

**FACTS**

13.     In 2017, Foodwit, a start-up company at the time, first approached Trustwell to request a license to access and use its Genesis Foods software system.  Based on Foodwit's representation that it would use Genesis Foods solely for its own internal business use, Trustwell entered into the limited-use License Agreement with Foodwit.  The Parties renewed the License Agreement annually for several years.  The Parties most recently renewed the License Agreement Agreement annually.  The Parties most recently renewed the License Agreement as of August 30, 2023, and it expired by its terms on August 29, 2024.  Foodwit has described itself as a "super user" of Genesis Foods, accessing and using it on a daily basis.

2.     14.     Section 3 (Limitations on License) of the License Agreement provides, in pertinent part, as follows:

> Licensee may use the Licensed Software solely for its internal business use ….  The Licensee is not licensed to do any of the following: (a) copy, sublicense, rent, lease, lend or otherwise transfer, disclose or publish the Licensed Software (or any portions thereof), or in any manner transfer or assign Licensee's rights under this Agreement without the prior written consent of ESHA; (b) use the Licensed Software for any purpose other than the purposes specifically licensed herein; (c) use the Licensed Software for the benefit of third parties or as part of its own commercially licensed products or services; (d) remove or obscure the ESHA copyright or trademark notices, or those of applicable Third Party Vendors, appearing on or with the Licensed Software; (e) compile the Licensed Software from one form to another or attempt to interfere with, disable, modify, convert, reverse engineer, reverse compile, change or reverse assemble it; [and] (f) compile, extract, strip, mine, harvest or otherwise collect, directly or indirectly, the data from the nutritional database embedded within the Licensed Software.

15.     Section 6 (Ownership, Copyrights) of the License Agreement provides, in pertinent part, as follows:

ESHA is the sole owner of all rights, title, and interest in the ESHA Software, including the embedded nutritional and regulatory database(s) and all customized and derivative works based upon them, and including all copies thereof and all copyright, patent, trademark, trade secret rights and other intellectual property rights embodied therein.

16. Section 7 (Licensee's Obligations to Protect the Licensed Software) of the License

Agreement provides as follows:

As a continuing condition of the licenses granted herein, Licensee covenants to use the Licensed Software only for the purposes set forth in this Agreement and for no other purpose and shall use commercially reasonable efforts to protect the Licensed Software from unauthorized use, reproduction, publication, or distribution.

17. Section 13 (Confidential Information) of the License Agreement provides, in

pertinent part, as follows:

The Licensed ESHA Software (including the nutritional and regulatory database information embedded therein) and all other information ESHA discloses to Licensee in connection with them, shall be considered ESHA's Confidential Information, which ESHA discloses only subject to this Agreement. Licensee agrees that it and its employees, agents and representatives shall, except as permitted herein: (i) keep ESHA's Confidential Information strictly confidential, and shall not disclose such information to any other person or entity without the express written consent of ESHA; (ii) limit internal disclosure of the Confidential Information solely to its employees, agents and representatives who must be apprised of the Confidential Information to advance the purposes of this Agreement, and only to the extent that they must be apprised for those purposes; (iii) contractually bind all such persons to honor the confidentiality and use restrictions imposed upon the Licensee; (iv) use the Confidential Information solely for the purpose of using the Licensed Software as licensed by ESHA in this Agreement; and (v) upon demand, immediately surrender to ESHA the Confidential Information and all notes, records, documentation, models, software, databases and other items or materials containing such Confidential Information.

18. Section 18 (Remedies) of the License Agreement provides, in pertinent part, as

follows:

The parties agree that in the event of a breach of any of the covenants pertaining to ESHA's intellectual property rights or Confidential Information, such a breach will result in irreparable and continuing damage in an amount which is not readily ascertainable and for which there will be no adequate remedy at law. In the event of any breach of such covenants, ESHA shall be entitled to injunctive relief and such other and further relief, including damages, as may be

provided by law.

19.     Section 22 (Governing Law) of the License Agreement provides that it "shall be governed by and construed in accordance with the laws of the state of Delaware without regard to, or application of, any conflict of law provisions."

20.     As mentioned above, Trustwell first introduced its Genesis Foods software system to customers in 1991, enabling companies to formulate foods virtually, create government-compliant nutrition panels and labels, and analyze the nutritional content of recipes, among a host of related functions.  Through decades of investment in research and development, Trustwell has continually updated and improved the system.  In 2024, Trustwell launched the next generation of Genesis Foods, providing a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance, including U.S., Mexico, Canada, Australia, New Zealand, and European Union food labeling requirements and guidelines.  While concept work for the new platform began several years before, coding work began in earnest in 2021.  In 2023, Foodwit received a confidential presentation regarding planned upgrades to the platform, including the new user interface.  The new platform features a streamlined user interface offering fast and intuitive product formulation and data entry while assisting users with regulatory compliance through built-in, automated data checks and alerts, and is supported by Trustwell's industry-leading and proprietary food and ingredient database.  The platform also automates the process of labeling calculations, making it easy for companies to create new product formulations within minutes and make real-time updates to existing recipes.

21.     Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means.  Indeed, Genesis Foods is widely recognized as the gold-standard system for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance.  By licensing access to

and use of its Trade Secrets, including Genesis Foods, subject to strict terms ~~and,~~ conditions, and protections, Trustwell generates revenue and income through licensing fees.  Such licensing represents a substantial portion of Trustwell's business.

22.     Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.  For example, Trustwell provides its customers access to such information solely pursuant to agreements that contain confidentiality provisions and other protections substantially similar to those contained in the License Agreement.  Moreover, Trustwell uses electronic, physical, and other security measures to maintain the secrecy of such information maintained in its secure facilities, such as password protections, firewalls, and other technical mechanisms.  Trustwell also executes confidentiality agreements with employees, and tracks and limits employee access to such information, providing it only to the extent necessary to perform their job functions.  Trustwell also regularly instructs and repeatedly reminds its employees of the highly sensitive and confidential nature of its Trade Secrets, which must be protected at all times from disclosure to third parties.

23.     Over a period of several months in 2022 and 2023, Foodwit engaged in discussions with Trustwell's Delaware parent company regarding a potential investment in or acquisition of Foodwit by Trustwell's parent company.  Over the course of those discussions, Foodwit's founder and majority owner, Becki Holmes, revealed that Foodwit is a "super user" of Genesis Foods, utilizing it on a daily basis.  In fact, Foodwit evidently relied so heavily on Genesis Foods that one of the required qualifications for ~~new hires~~ certain positions was listed as "[p]roficiency in [Trustwell] Genesis nutrient analysis software."  Ms. Holmes ~~also~~ mentioned that she did not believe there were viable competitors to Genesis Foods in the market because of its unique and powerful regulatory compliance tools.  ~~She claimed~~ She added that, because of her extensive experience with Genesis Foods, she had unique insight into what "is working / not

8

working" with the platform. She claimed, however, that Foodwit had a greater industry reach than Trustwell, suggesting that if Foodwit replicated the Genesis Foods system, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach. Trustwell's parent company did not invest in or acquire Foodwit.

24.     In 2024, Trustwell launched the next generation of Genesis Foods. Pursuant to the terms, conditions, and protections of the limited-use License Agreement, Foodwit accessed and used the new Genesis Foods system. However, on information and belief, Foodwit secretly accessed and used the new Genesis Foods system to help design and build Workbench, and exported a substantial volume of proprietary data from Genesis Foods for that purpose. In fact, Ms. Holmes made sure to confirm before renewing the License Agreement for the final time that "API / Import / Export functionality [would be] included." Foodwit recentlysubsequently announced the creation and impending launch of Workbench, which Foodwit describes as a "world-class compliance solution" that "features integrated compliance checks and workflows to validate compliance, formulation, claim and labeling data."

25.     Trustwell has reviewed publicly available information, including screenshots and other information, regarding the features and functionalities of Workbench. On information and belief, Workbench is based on and derived from Genesis Foods with respect to at least a large number of features and functionalities, including but not limited to the following:

- Build and scale recipes from ingredients;

- Analyze real-time formula impact to nutrient, ingredient, and allergen profiles;

- Integrated regulatory compliance checks;

- Automated alerts for regulatory compliance issues;

- Automated alerts based on ingredients for things like allergens;

- SaaS-based application;

9

- Look and feel of the user interface;

- Ingredient statement with manual override;

- Ingredient standard of identity;

- Listing of standard and non-standard nutrients;

- Nutrient fact panel displayed with recipe formulation;

- Reporting and downloadable print production assets (labels); and
- Upload documents per recipes.

This is not surprising given that Foodwit accessed and used Genesis Foods on a daily basis and, on information and belief, exported a substantial volume of proprietary data from it while simultaneously developing and building Workbench.  Indeed, it appears that Foodwit and Ms. Holmes essentially duplicated at least substantial portions of Genesis Foods.

26.     Foodwit makes the following additional representations, among others, regarding Workbench on its website:

- "Engineered by food and supplement industry veterans;"

- "Go-to-market more quickly with built-in compliance analyses, document management, reporting and downloadable production-ready label assets;"

- "See real-time formula impacts to nutrient, ingredient and allergen profiles;"

- "[B]uilt-in compliance analyses for food regulations;"

- "Trusted by leading brands;"

- "Workbench … is a breakthrough for compliance software in the food and beverage industry, offering unmatched compliance and efficiency;" and

- "[I]t's a revolution in managing compliance, offering real-time nutrient evaluation and allergen compliance with the peace of mind that regulatory experts have validated its methods."

10

27.     At least substantial portions of the Workbench software system that Foodwit advertises and repeatedly touts on its website as, among other things, a "breakthrough," a "revolution," and "world-class" appear to be, in fact, Trustwell's Trade Secrets, access to which was provided to Foodwit solely pursuant to the limited-use License Agreement.  Foodwit omits that it secretly leveraged Trustwell's Trade Secrets to design and build Workbench.  Foodwit also omits that, by doing so, it avoided decades of investment in research and development and thereby gained access to valuable technology and markets without commensurate investment.  On information and belief, Foodwit knew it could not afford the investment—in time or money— necessary to develop legitimately a software system that could compete with Genesis Foods.; Foodwit therefore resorted to misappropriation to quickly and cheaply create a competitive product.  In so doing, Foodwit also relieved itself of its heavy reliance on Genesis Foods; it.  It no longer had to license Genesis Foods because it essentially duplicated the system.

28.     At no point did Trustwell ever authorize Foodwit to access, use, or disclose its Trade Secrets in any way beyond the terms and conditions of the limited-use License Agreement. Trustwell has never and would never knowingly provide access to its Trade Secrets to enable a company to commercialize or otherwise leverage those materials to help build a competing product competitive and enter valuable marketsproduct lines with virtually no investment.  On information and belief, Foodwit failed even to provide proper attribution, as required by section 6 of the License Agreement.  In other words, on information and belief, through the above representations and omissions, as well as numerous others on its website and elsewhere, Foodwit falsely and deceptively marketed, and continues to falsely and deceptively market, Trustwell's crown-jewel Trade Secrets as Foodwit's own creation, the result of Foodwit's own honest, hard work.

29.     ~~Foodwit has flatly refused Trustwell's efforts~~In response to ~~meet and confer about this dispute, dismissing~~ Trustwell's cease-and-desist letter, which Foodwit promptly dismissed as nothing more than a "bullying tactic~~."~~," Foodwit ~~has offered nothing~~baldly denied any misconduct.  Trustwell's CEO immediately reached out to Ms. Holmes directly, in an attempt to resolve this dispute informally.  Ms. Holmes rebuffed the attempt, responding that "it would be best for the attorneys to handle any additional communication."  Trustwell nevertheless spent the next several months attempting to discuss with Foodwit ways in which it could substantiate its ~~assertion that it did nothing wrong in building Workbench, which is not surprising given the substantially identical nature of~~denials, in a concerted effort to resolve the dispute short of litigation.  Trustwell proposed a trust-but-verify approach that required substantiation.  Unfortunately, Foodwit rejected each of Trustwell's proposals and ultimately refused to provide any substantiation whatsoever.  Foodwit insisted that Trustwell trust but *not* verify.  Given the substantial identity between the two systems.~~Foodwit said only that it would not renew the~~, however, as well as Foodwit's export history and comments about replicating the Genesis Foods system, Trustwell was unwilling to blindly trust Foodwit's unsupported denials.

~~29.~~30.    Foodwit's limited-use License Agreement ~~after it~~ expired ~~by its terms~~ on August 29, 2024.  Of course, Foodwit has no further need for Genesis Foods ~~now~~given that it appears to have copied for its own use at least substantial portions of Trustwell's system.  On information and belief, Foodwit's ~~continuing refusal to substantively engage with Trustwell on this dispute is intentional, meant to~~repeated but slow-rolled rejections of Trustwell's proposals to substantiate Foodwit's denials of misconduct were meant to delay and obstruct this lawsuit and minimize publicly available information about Workbench so as not to reveal even more substantial similarities with Genesis Foods, demonstrating the malicious and oppressive nature of Foodwit's continuing misconduct.

~~30.~~31.    When Foodwit ~~refused to agree to stop its ongoing misappropriation, and~~

repeatedly refused to comply with Trustwell's ~~other~~ demands, Trustwell's only available

recourse, and only available means to protect its Trade Secrets, was to file suit.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

~~31.~~32.     Trustwell hereby incorporates by reference paragraphs 1 through ~~30~~31, inclusive,

as if set forth fully herein.

~~32.~~33.     As set forth above, ~~Trustwell~~Foodwit entered into the limited-use License

Agreement with ~~Foodwit~~Trustwell in 2017, renewing it annually ~~through~~until it expired in 2024~~,~~

~~and~~.  Trustwell provided Foodwit access to and use of Genesis Foods and related information

pursuant to the terms, conditions, and protections of the License Agreement.

~~33.~~34.     By using Genesis Foods and related information as described above, and by

refusing to comply with Trustwell's demands, Foodwit has breached and continues to breach at

least sections 3, 6, 7, and 13 of the License Agreement.

~~34.~~35.     As a direct and proximate result of Foodwit's breaches, Trustwell has suffered and

will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an

award of attorneys' fees pursuant to section 24 of the License Agreement, which provides, in

pertinent part, that "[i]f either party to this Agreement breaches any term of this Agreement, then

the other party shall be entitled to recover all expenses of whatever form or nature, costs, and

attorneys' fees reasonably incurred to enforce the terms of the Agreement, whether or not suit is

filed."

**SECOND CAUSE OF ACTION** ~~MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE~~

**MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq.*)**

~~35.~~36.    Trustwell hereby incorporates by reference paragraphs 1 through ~~30~~35, inclusive, as if set forth fully herein.

~~36.~~37.    Trustwell owns and possesses its Trade Secrets.  As set forth above, Trustwell granted Foodwit access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the limited-use License Agreement.

~~37.~~38.    As set forth above, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and launch Workbench.

~~38.~~39.    As set forth above, and on information and belief, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets to market and sell Workbench to the same types of customers who presently utilize Genesis Foods, in ~~a concerted~~an effort to divert such customers and business away from Trustwell and to Foodwit.

~~39.~~40.    As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

~~40.~~41.    As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means.  Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, as they have to Foodwit.

~~41.~~42.    As set forth above, Foodwit willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for their own competitive use and for their own financial

benefit.

42.43.    On information and belief, and as set forth above, Foodwit, including through its founder and majority owner, Ms. Holmes, intentionally, knowingly, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

43.44.    On information and belief, and as set forth above, Foodwit is still in possession of, and continues to use and disclose, Trustwell's Trade Secrets. If, thus, if Foodwit's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

44.45.    Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.  Moreover, as set forth above, Foodwit's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to prevent such future misconduct.  Therefore, Trustwell also seeks an order under 18 U.S.C. § 1836(b)(2) for the seizure of any and all of Trustwell's Trade Secrets and confidential or proprietary information in the possession, custody, or control of Foodwit.

45.46.    As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

### THIRD CAUSE OF ACTION

### FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))

46.47.    Trustwell hereby incorporates by reference paragraphs 1 through 3046, inclusive, as if set forth fully herein.

47.48.   As set forth above, Foodwit misappropriated Trustwell's confidential, proprietary, and trade secret Genesis Foods software system and related information to build, market, and launch its competing product, Workbench, to customers across the country.  In the process, and as set forth above, Foodwit has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of Workbench, including its features and functionalities, which were built using Trustwell's stolen materials.

48.49.   On information and belief, and as set forth above, Foodwit's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), who would not seek to purchase or license Workbench if they knew the truth, and instead likely would do business (or continue to do business) with Trustwell.

49.50.   As set forth above, Foodwit's falsely-represented product, Workbench, is marketed and sold across the country and travels in, and has a substantial effect on, interstate commerce.

50.51.   As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of treble damages and attorneys' fees.

### FOURTH CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DELAWARE UNIFORM TRADE SECRETS ACT (6 DEL. CODE ANN. § 2001, *et seq.*)

51.52.   Trustwell hereby incorporates by reference paragraphs 1 through 3051, inclusive, as if set forth fully herein.

52.53.   As set forth above, Trustwell owns and possesses its Trade Secrets.  Trustwell

granted Foodwit access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the limited-use License Agreement.

53.54. As set forth above, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and launch Workbench.

54.55. As set forth above, and on information and belief, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets to market and sell Workbench to the same types of customers who presently utilize Genesis Foods, in a concertedan effort to divert such customers and business away from Trustwell and to Foodwit.

56. As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

55.57. As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means. Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, and they have to Foodwit.

56.58. As set forth above, Foodwit willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for its own competitive use and for its own financial benefit.

57.59. On information and belief, and as set forth above, Foodwit, including through its founder and majority owner, Ms. Holmes, intentionally, knowingly, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

58.60. On information and belief, and as set forth above, Foodwit is still in possession of,

17

and continues to use and disclose, Trustwell's Trade Secrets. ~~If~~; thus, if Foodwit's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

~~59.~~61.    Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests.  Moreover, as set forth above, Foodwit's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to prevent such future misconduct.  Therefore, Trustwell also seeks an order under 6 Del. Code Ann. § 2002(c) for the seizure of any and all of Trustwell's Trade Secrets in the possession, custody, or control of Foodwit.

60.62.    As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

## FIFTH CAUSE OF ACTION

## DECEPTIVE TRADE PRACTICES UNDER THE DELAWARE DECEPTIVE TRADE PRACTICES ACT (6 DEL. CODE ANN. § 2531, *et seq.*)

61.63.    Trustwell hereby incorporates by reference paragraphs 1 through 3062, inclusive, as if set forth fully herein.

62.64.    As set forth above, Foodwit misappropriated Trustwell's confidential, proprietary, and trade secret Genesis Foods software system and related information to help build, market, and launch Workbench, a competing product, to customers across the country.  In the process, as set forth above, Foodwit has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of Workbench, including its software and source data, which was built using Trustwell's stolen materials, in violation of at least sections 2532(a)(1), (2), (5), and (12) of Title 6 of the Delaware Code Annotated.

63.65.    On information and belief, and as set forth above, Foodwit's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), who would not seek to purchase or license Workbench if they knew the truth, and instead likely would do business (or continue to do business) with Trustwell.

64.66.    As set forth above, Foodwit's falsely-represented Workbench is marketed and sold across the country and travels in, and has a substantial effect on, interstate commerce.

65. 67.    As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of punitive damages and attorneys' fees.

## JURY TRIAL DEMAND

66. 68.    Trustwell respectfully requests a jury trial in this action on all issue so triable.

## PRAYER FOR RELIEF

Based on the foregoing, Trustwell prays for the following relief against Foodwit:

1.    Judgment in Trustwell's favor and against Foodwit on all causes of action alleged herein;

2.    A preliminary and permanent injunction to enjoin Foodwit, its agents, representatives, employees, attorneys, successors, and assigns, and all persons and entities acting in concert with them, from further misappropriation or unauthorized use of Trustwell's confidential, proprietary, and trade secret information and materials;

3.    An order for Foodwit to pay Trustwell compensatory damages based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law;

4.    An order for Foodwit to pay Trustwell consequential and actual damages or disgorgement of Foodwit's profits unjustly obtained, restitution, and/or reasonable royalties, based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law

5.    An order for Foodwit to pay Trustwell exemplary, treble, and/or punitive damages for Foodwit's intentional, knowing, willful, malicious, fraudulent, and oppressive

conduct;

6.      An order for Foodwit to pay Trustwell its reasonable attorneys' fees and allowable

costs and expenses; and

7.      All other such relief to Trustwell under law and equity as the Court deems just and

proper.


Dated: ~~September __, 2024   Respectfully submitted,~~February 20, 2025


                                        ~~By:~~   */s/ Kenneth L. Dorsney*
                                        Kenneth L Dorsney (#3726)
                                        Cortlan S. Hitch (#6720)
                                        MORRIS JAMES LLP
                                        500 Delaware Avenue, Suite 1500
                                        Wilmington, DE  19801
                                        Telephone: (302) 888-~~6855~~
                                        ~~Facsimile: (302) 571-1750~~
                                        ~~E-mail:6800~~ kdorsney@morrisjames.com
                                        chitch@morrisjames.com

                                        *Of Counsel:*

                                        Cary D. Sullivan (~~*PHV app. pending*~~*pro hac vice* to be filed*) JONES DAY
                                        3161 Michelson Drive, Suite 800
                                        Irvine, CA  92612
                                        Telephone: (949) 851-3939
                                        ~~Facsimile: (949) 553-7539~~
                                        ~~E-mail:~~ carysullivan@jonesday.com


                                        ~~Counsel~~*Attorneys* for Plaintiff ~~TRUSTWELL~~ *ESHA Research, LLC, now known as Trustwell*

NAI-1541197348v1