| | |
|---|---|
| P. Andrew McStay, Jr., OSB 033997<br>DAVIS WRIGHT TREMAINE LLP<br>560 SW 10th Avenue, Suite 700<br>Portland, Oregon 97205<br>(503) 241-2300 tel<br>(503) 778-5299 fax<br>andymcstay@dwt.com | Brian R. Talcott, OSB 965371<br>DUNN CARNEY LLP<br>851 SW 6th Avenue, Suite 1500<br>Portland, Oregon 97204<br>(503) 224-6440 tel<br>(503) 224-7324 fax<br>btalcott@dunncarney.com |
| Matthew S. Warren (*pro hac vice*)<br>Erika H. Warren (*pro hac vice*)<br>WARREN KASH WARREN LLP<br>2261 Market Street, No. 606<br>San Francisco, California 94114<br>(415) 895-2940 tel<br>(415) 895-2964 fax<br>25-656@cases.warrenlex.com | Cary D. Sullivan (*PHV app. to be filed*)<br>JONES DAY<br>3161 Michelson Drive, Suite 800<br>Irvine, California 92612<br>(949) 851-3939 tel<br>(949) 553-7539 fax<br>carysullivan@jonesday.com |
| *Attorneys for Plaintiff RLH Assets, LLC d/b/a Foodwit* | *Attorneys for Defendant ESHA Research, LLC* |

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br><br>                    Plaintiff,<br><br>            v.<br><br>ESHA RESEARCH, LLC, an Oregon limited liability company,<br><br>                    Defendant. | Case No. 3:25-cv-00656-AB<br><br>**JOINT RULE 26(f) REPORT** |

**JOINT STATUS REPORT**

Plaintiff RLH Assets, LLC d/b/a Foodwit and Defendant ESHA Research, LLC, now known as Trustwell, hereby jointly submit this Rule 26(f) status report. Counsel for the parties conferred on June 17, 2025.

**I.     Mutually Agreeable Dates for Telephonic Rule 16 Conference**

Under the Court's order of June 10, 2025, the parties provide four mutually agreeable proposed dates and times for a thirty-minute Rule 16 telephone conference during the weeks of June 24, 2025, or July 14, 2025:

- July 16, 2025, at 9:30 a.m. PT
- July 16, 2025, at 1:30 p.m. PT
- July 17, 2025, at 9:30 a.m. PT
- July 17, 2025, at 1:30 p.m. PT

**II.    Consent to Magistrate**

The parties do not consent to having a magistrate judge conduct all further proceedings including trial and entry of judgment.

**III.   Jurisdiction and Venue**

The parties agree the Court has subject matter jurisdiction (federal question jurisdiction and pendent jurisdiction) over all claims in this action, and personal jurisdiction over all parties. The parties agree that venue is proper in this District. No parties remain to be served.

**IV.    Brief Description of Claims and Defenses**

**A.     Foodwit's Statement**

This action seeks redress for ESHA's unlawful anticompetitive conduct, seeking to preserve its acknowledged monopoly power, in the U.S. market for SaaS-based applications for packaged food-labeling compliance. As set forth in Foodwit's complaint, ESHA has improperly sought to maintain its monopoly position in this market. *See, e.g.,* Docket No. 1 ¶¶ 150-196.

ESHA below claims that "there is no basis for Foodwit's antitrust claims absent Trustwell's affirmative claims against Foodwit in the separate action," but that is incorrect: Foodwit brought two claims under the Sherman Act, and while Count II is limited to ESHA's sham litigation against Foodwit, Count I is not, and seeks redress for the full sweep of ESHA's anticompetitive conduct. In addition, Count V seeks redress for ESHA's tortious interference with Foodwit's expectation of business relations and economic advantage, also not limited to ESHA's sham litigation. Finally, Count III seeks a declaration that Foodwit did not steal ESHA's trade secrets, Count IV seeks a declaration that Foodwit did not breach the governing contract, and Count VI seeks redress for ESHA's own breach of the same contract by improperly filing a complaint in the District of Delaware. ESHA below claims that Foodwit's "declaratory relief claims are not proper causes of action," but its Answer tells a different story, Docket No. 17, by declining to challenge these claims. In short, although ESHA casts this action as somehow lesser than its offensive case, the opposite is true.

Similarly, although ESHA below states that Foodwit "copied" its claims from Cronometer, another litigation opponent of ESHA, a cursory review of Foodwit's complaint and Cronometer's counterclaims confirms that they address different markets, raise different issues, and bring different claims. *Compare* Docket No. 1 *with ESHA Research, Inc. v. Cronometer Software, Inc*., No. 3:24-cv-01586 (D. Or.), Docket No. 6. But the two cases have two big things in common. First, both allege harm from, among other things, ESHA's attempts to maintain a monopoly position by baselessly threatening a competitor. And second, both address ESHA's claims that its competitor stole its "crown jewels," and its refusal to specify what those alleged "crown jewels" are. Although the Court required ESHA to specify its asserted trade secrets in *Cronometer*, ESHA has refused to follow this precedent and reveal its asserted trade secrets to

Foodwit in this action. ESHA's continued refusal to provide specific allegations serves to reinforce Foodwit's claim that ESHA's "crown jewels" bluster is exactly that.

### B.      Trustwell's Statement

Foodwit's statement above is an unfortunate work of fiction. To begin, Trustwell suggested to Foodwit weeks ago that the parties agree to consolidate this case with Trustwell's affirmative case against Foodwit, which was recently transferred to this District from the District of Delaware. Foodwit declined. Yet, Foodwit now seeks to use Trustwell's trade secret misappropriation claims in its (still-separate and unrelated) case against Foodwit as a means to delay discovery here. Foodwit cannot have it both ways. Because Foodwit seems intent on maintaining the cases separately, Trustwell will identify its trade secrets, at the appropriate time, in its case in which it is asserting trade secret misappropriation claims against Foodwit. Not here.

Moreover, Foodwit has copied the approach taken by another former customer that Trustwell recently sued, and has asserted what amount to counterclaims to the causes of action that Trustwell filed against Foodwit. Indeed, the 'sham litigation' theory on which Foodwit's antitrust claims are based is premised on the notion that Trustwell's affirmative claims against Foodwit are both objectively meritless and subjectively filed for the sole purpose of harming a competitor. In other words, there is no basis for Foodwit's antitrust or other claims absent Trustwell's affirmative claims against Foodwit in the separate action. That Trustwell has sued a total of *two* former customers for stealing Trustwell's data and using it to create competing products hardly qualifies as anticompetitive conduct. Rather, it reflects a company that is invested in protecting its valuable intellectual property. Before filing suit against Foodwit, Trustwell tried for six months to resolve the dispute informally. Foodwit steadfastly refused to

substantiate any of its blanket denials of wrongdoing, leaving Trustwell no option but to seek legal recourse.

For all the reasons above and as set forth in Trustwell's separate suit against Foodwit, Trustwell believes Foodwit's antitrust claims are utterly meritless. And the purported declaratory relief claims are not proper causes of action, but rather affirmative defenses seeking a judgment of no liability as to Trustwell's claims against Foodwit in the separate action.

## V.    Principal Legal Issues to be Decided

### A.    Foodwit's Statement

Foodwit expects that the principal legal issues will include:

(a)    Whether ESHA has engaged in anticompetitive conduct in violation of the Sherman Antitrust Act, 15 U.S.C. § 2.

(b)    Whether Foodwit has misappropriated any trade secret owned by ESHA under 18 U.S.C. §§ 1831-39.

(c)    Whether Foodwit breached a contract with ESHA.

(d)    Whether ESHA has tortiously interfered with Foodwit's business relations or economic advantage.

(e)    Whether ESHA has breached its contract with Foodwit by filing an action against Foodwit in Delaware.

### B.    Trustwell's Statement

Foodwit's list of legal issues includes legal issues relating to Trustwell's separate action against Foodwit. As noted above, however, Foodwit declined Trustwell's suggestion to agree to consolidate the cases. If the cases are consolidated in the future, the list above is incomplete and should also include (1) whether and to what extent Foodwit breached sections 3, 6, 7, 8, and 12

of its limited-use license agreement with Trustwell; (2) whether and to what extent Foodwit engaged in false advertising and/or false designation of origin under the Lanham Act; (3) whether and to what extent Foodwit engaged in trade secret misappropriation under the Oregon Uniform Trade Secrets Act; and (4) whether and to what extent Foodwit engaged in unlawful trade practices under the Oregon Unlawful Trade Practices Act.

## VI.     Alternate Dispute Resolution

The parties are both amenable to alternative dispute resolution of this action and will confer regarding an agreed ADR procedure within the time set forth in Local Rule 16-4(c).

## RULE 26(f) DISCOVERY PLAN

The parties submit the following proposals on the topics listed in Federal Rule of Civil Procedure 26(f).

## I.      Initial Disclosures

The parties agree to exchange initial disclosures under Federal Rule of Civil Procedure 26(a)(1) on July 1, 2025.  The parties agree that no limitations or modifications to the form of disclosures set forth in Rule 26 are necessary.

## II.     Scope of Discovery

### A.     Limitations on Discovery

The parties dispute the limitations on interrogatories, requests for admission, and depositions, and set forth their views below.

#### 1.     Foodwit's Statement

There is good cause to deviate from the defaults in the Federal Rules of Civil Procedure in the following ways, for the following reasons.

**Interrogatories.** Instead of the default of 25, each party should have 15 interrogatories, plus one additional interrogatory for each cause of action and each affirmative defense asserted by the other party. ESHA's answer to Foodwit's complaint asserts 17 boilerplate affirmative defenses. Foodwit believes ESHA will lack factual support for many of not most of these affirmative defenses, and plans to propound interrogatories regarding them. Foodwit raised this issue with ESHA while meeting and conferring on this submission, but ESHA declined to modify its position. ESHA's use of numerous boilerplate affirmative defenses, and its refusal to alter the interrogatory limit accordingly, will impair Foodwit's ability to gather discovery in this matter, as Foodwit must either spend 17 of 25 interrogatories on affirmative defenses alone (leaving too few for other inquiries) or tender one interrogatory seeking the factual basis of all of ESHA's affirmative defenses (likely drawing an objection of improper compounding and requiring resolution by the Court). Discovery in this Court should not be a trap, but should promote the fair exchange of information among counsel. Foodwit's proposal accomplishes this goal.

**Requests for Admission.** The parties should be limited to 50 requests for admission is permitted for each side, excluding requests for admission concerning the authenticity of documents. The default of unlimited requests for admission encourages fishing expeditions with requests for admission, and leads to increased requests for Court intervention. A reasonable limit of 50 requests for admission discourages this kind of gamesmanship. Allowing unlimited requests for admission for authenticity of documents discourages a different kind of gamesmanship, by encouraging parties to agree on authenticity of documents.

**Limits on Depositions**. Instead of ten depositions of seven hours each, the parties should be limited to a total of 70 hours of testimony by deposition upon oral examination, excluding

non-party depositions. As under the default rule, each deposition would be presumptively limited to seven hours, unless there is cross-examination after seven hours, in which case the noticing party could further examine regarding the cross-examination.

The default rule encourages counsel to filibuster deponents because, once a deposition starts, they might as well use the full seven hours. This rule discourages that gamesmanship by allowing counsel to conserve hours and take more than ten party depositions. This rule also appropriately charges examination time by counsel for parties other than the noticing party and any further examination time after cross-examination, which the default rule does not address. Finally, this rule reflects the need for third-party discovery into ESHA's anticompetitive conduct. Foodwit's complaint alleges that ESHA's anticompetitive conduct affected other industry players as well as Foodwit, *see, e.g.*, Docket No. 1 ¶¶ 87-103, and the default rule of ten total depositions would severely hamper Foodwit's investigation into that misconduct.

**Location of Depositions.** The Court should order that any party witness, including an employee, officer, director, managing agent, or paid expert of a party, shall sit for deposition within this District unless otherwise agreed by the parties or ordered by the Court. This is an Oregon case between two Oregon companies; absent agreement or Court order, depositions should be in Oregon. This rule will further discourage gamesmanship with deposition locations.

### 2. Trustwell's Statement

Foodwit offers only speculation and conjecture about a purported need to deviate from the ordinary rules set forth in the Federal Rules of Civil Procedure. Speculation and conjecture do not constitute good cause. To date, Foodwit has propounded one single interrogatory. Trustwell has propounded one set of interrogatories and one set of document requests. Foodwit has not raised any issues regarding the scope of discovery propounded to date.

If *actual* disputes arise in the future regarding *actual* discovery that has been propounded, and if the parties are unable to reach a reasonable compromise after meeting and conferring, Foodwit is entitled to move for relief, at which time it will need to establish good cause. None of that has happened. Unless and until it does, Trustwell believes that the Federal Rules of Civil Procedure should govern discovery in this action.

### B. Phasing of Discovery

The parties dispute the phasing of discovery, and set forth their views below.

#### 1. Foodwit's Statement

The Court should stay all discovery in this matter until ESHA provides its alleged trade secrets with sufficient particularity. "Numerous courts have held that a party alleging a claim for misappropriation of trade secrets is required to identify its alleged trade secrets with reasonable particularity before it will be allowed to compel discovery of its adversary's trade secrets." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1153 n.2 (D. Or. 2015) (collecting cases). It is not hard to understand why: "it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated," and requiring a party "to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives." *BioD, LLC v. Amnio Tech., LLC*, No. 13-1670, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) (quoting *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007)). Foodwit did not expect this issue to be controversial, as this Court confronted the same issue in ESHA's case against Cronometer, and resolved it by following this well-traveled path:

> Discovery is stayed pending the identification of the trade secrets at issue. As discussed on the record, Plaintiff is to respond to Defendant's interrogatory relating to trade secret identification by 02/24/2025. The parties are ordered to confer in good faith

>to resolve the issue of trade secret identification amicably and file a joint status report on that progress by 03/03/2025.

*ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-1586, Docket No. 13 (D. Or. Feb. 13, 2025). But to Foodwit's surprise, ESHA refused to agree to the same procedure, claiming that "that requirement relates only to claims for trade secret misappropriation *in the same case*." (Emphasis in original.) ESHA reasserts this view below, noting that it "has asserted no trade secret claims—or any claims at all—in this case." But EHSA's position makes no sense. Count III of Foodwit's complaint in this action seeks a declaratory judgment that Foodwit stole no trade secrets from ESHA. Docket No. 1 ¶¶ 197-204. ESHA has answered that claim and largely denied Foodwit's allegations. Docket No. 17 ¶¶ 197-204. If ESHA has now changed its mind and no longer claims that Foodwit stole any trade secrets, the Court can grant Foodwit judgment on Count III, finally resolving that issue between the parties. But if ESHA continues to claim that Foodwit did steal its trade secrets, the pleadings on Count III put that dispute squarely before this Court in this action, and the Court should require ESHA to follow the usual procedure of disclosing its trade secrets before proceeding with other discovery.

Although always applicable, this general rule is specifically important in this matter. As Foodwit explained in its complaint, since ESHA first made its vague allegations of theft in August 2024, Foodwit has repeatedly asked ESHA to explain specifically what it alleges that Foodwit stole. *See, e.g.*, Docket No. 1 ¶¶ 122-149. ESHA has repeatedly refused to do so. *See, e.g., id.* Foodwit believes, and its complaint asserts, that ESHA's submission of vague allegations and refusal to explain those allegations is part of a campaign to intimidate its emerging competitors, including at least Foodwit, through baseless accusations and litigation against them for unspecified "theft" of ESHA's unspecified "crown jewels." *See, e.g., id.* ¶¶ 167-178, 188-196. Foodwit further alleges that, since its acquisition and exponential price

increases, ESHA has directly threatened new market participants through a series of escalating demands for the purpose of excluding them from the U.S. SaaS-based application for food-labeling compliance market. *See, e.g., id.* ESHA's ability (or inability) to specify cognizable trade secrets *without* first obtaining discovery from Foodwit will not only affect any trade secret claims by ESHA, but will also indicate whether ESHA can articulate an alternative rationale for its "crown jewels" litigation campaign, including at a minimum what the "crown jewels" are. For this reason as well, the Court should require ESHA to specify its alleged trade secrets with "reasonable particularity" before proceeding with discovery. *Vesta*, 147 F. Supp. 3d at 1152.

### 2.   Trustwell's Statement

As noted above, Trustwell is asserting no claims in this action, and Foodwit declined to agree to consolidate this case with the separate action that Trustwell filed against Foodwit. When Trustwell's suit against Foodwit was transferred to this District, Trustwell's counsel promptly reached out to Foodwit's counsel to suggest that the parties agree to consolidate that case with the instant action. After all, the claims Foodwit is asserting here were filed *in response* to Trustwell's original suit against Foodwit. Nevertheless, by email dated May 23, 2025, Foodwit's counsel declined, stating as follows:

> We are happy to discuss reasonable mechanisms for coordination, but our inclination is that a conversation about coordinating the pleadings should occur once we know what the pleadings will be. Right now we don't; we await the filing of your amended complaint, as well as both parties' responses to each other's complaints.

Having declined to agree to consolidate the cases, Foodwit cannot now use Trustwell's trade secret misappropriation claims in a separate and unrelated case as a basis to delay discovery here. Because Trustwell has asserted no trade secret claims—or any claims at all—in this case, there is no basis to delay discovery here. Trustwell is entitled to begin discovery without delay with respect to Foodwit's claims against Trustwell.

Page 11 – JOINT RULE 26(f) REPORT

**III.     Electronically Stored Information**

The parties discussed electronic discovery during the Federal Rule of Civil Procedure 26(f) conference and agreed to meet and confer for the purpose of entering a stipulated e-discovery order. The parties each acknowledge their duty to preserve, and are not presently aware of any issues concerning disclosure, discovery, or preservation of electronically stored information.

**IV.     Claims of Privilege and Protection of Confidentiality**

The parties discussed privilege and confidentiality during the Federal Rule of Civil Procedure 26(f) conference and agreed to meet and confer for the purpose of entering a stipulated protective order, working from the Court's modified version of the Tier 2 stipulated protective order template.

**V.     Proposed Case Management Schedule**

   **A.     Joint Statement**

The parties agree on the following proposed dates:

| Event | Proposed Deadlines |
|---|---|
| Joinder of Other Parties and Amendment of Pleadings. | Friday, September 26, 2025 |
| Document Production Complete | Friday, February 13, 2026 |
| Close of Fact Discovery | Friday, March 27, 2026 |
| Opening Expert Reports | Friday, May 1, 2026 |
| Rebuttal Expert Reports | Friday, May 29, 2026 |
| Reply Expert Reports | Friday, June 12, 2026 |
| Close of Expert Discovery | Friday, July 10, 2026 |
| Joint ADR Report | Friday, July 31, 2026 |

B.  **Foodwit's Statement**

Foodwit submits that it would be more efficient for the Court to schedule this matter only through the Joint ADR Report, as it did in *Cronometer*. In that case, as the Court explained during the Rule 16 conference:

> Indeed, while I usually do set case deadlines all the way through trial, in a case like this, I think a baby-step approach makes more sense. That way I can be on top of what's happening with you all and the case needs and respond accordingly, and that way we can avoid resetting deadlines if necessary.
>
> So we'll just take this case a little bit slower and—in the sense of scheduling it out, and I will look forward to getting that status report on March the 3rd or sooner if parties figure it out, and then we will enter the next steps of the case as appropriate.

*ESHA Research, Inc. v. Cronometer Software, Inc.*, Case No. 24-1586, Docket No. 15 at 16:13-23 (D. Or. Feb. 11, 2025). The same logic applies here. If the Court wishes to schedule beyond the Joint ADR Report, Foodwit would accept ESHA's proposal below for dispositive and Daubert motions, with a trial date set by the Court.

C.  **Trustwell's Statement**

In addition to the agreed dates above, Trustwell proposes the following dates:

| Event | ESHA's Proposed Deadlines |
|---|---|
| Deadline for Case Dispositive Motions and *Daubert* Motions | Friday, August 7, 2026 |
| Response Briefs to Case Dispositive and *Daubert* Motions | Friday, August 28, 2026 |
| Reply Briefs to Case Dispositive and *Daubert* Motions | Friday, September 11, 2026 |
| Pretrial Conference | 30 days following the Court's rulings on case dispositive motions. |
| Trial | Monday, December 8, 2026 |

## VI. Length of Trial

The parties agree that trial in this matter will take approximately five to seven days, including jury selection.

## VII. Electronic Service Agreement

Effective as of the filing of this joint report, under Federal Rule of Civil Procedure 5(b)(2)(F), the parties agree to electronic service of papers in this action according to the following procedure.

Service is effective when made to the following and only to the following designated service addresses, one per law firm appearing in the case:

For Foodwit:  25-656@cases.warrenlex.com, andymcstay@dwt.com

For Trustwell:  carysullivan@jonesday.com, btalcott@dunncarney.com

If a new law firm appears for a party in this matter, it will promptly designate in writing one (and only one) email address to receive electronic service in this matter.

Service is complete upon transmission of an email to the addresses above containing or attaching the documents served, or, if necessary for size, security or other reasons, notifying the recipient of the documents' availability for electronic download.  For the avoidance of doubt, service under this agreement will not cause an extension of time under Federal Rule of Civil Procedure 6(d).

Dated: June 20, 2025

| | |
|---|---|
| DAVIS WRIGHT TREMAINE LLP | DUNN CARNEY LLP |
| *s/P. Andrew McStay, Jr.*_____ | *s/Brian Talcott*_____ |
| P. Andrew McStay, Jr. | Brian Talcott |

Page 14 – JOINT RULE 26(f) REPORT