# Exhibit C

***ESHA Research v. RLH Assets*, No. 25-cv-00880-AB (D. Oregon),**
***RLH Assets v. ESHA Research*, No. 25-cv-00656-AB (D. Oregon): Foodwit's Statement**

This dispute represents a reversal of the normal disagreement about source code: Foodwit wants to produce its own source code, but ESHA does not want to review it, and is seeking to delay Foodwit's production of source code by refusing to negotiate a supplemental protective order concerning source code production. Although Foodwit gave ESHA ample time to consider Foodwit's proposal, ESHA did not and does not dispute any particular provision, instead claiming source code is irrelevant because no party has requested it. But ESHA itself explicitly requested source code discovery, and that discovery is highly relevant to ESHA's claims concerning alleged theft of software functionality. Foodwit therefore respectfully requests the Court supplement the protective order in this action to add source code production provisions.

ESHA's document requests to Foodwit included demands for:

- "All DOCUMENTS RELATING TO YOUR assertion that WORKBENCH was created independently and without reference to GENESIS FOODS." -880, Request No. 10.
- "All DOCUMENTS RELATING TO any source code repository, version-control system, branch, merge request, release note, build log, deployment log, or change log for WORKBENCH." -880, Request No. 16.
- "All DOCUMENTS relating to Workbench and any related or subsequent version or iteration of that product." -656, Request No. 58.

All three of these requests (and many others) call for production of Foodwit's source-code information. Although parties often object to production of source code, Foodwit is eager to produce it, because its source code will show that Foodwit developed its own product and did not steal anything from ESHA. On August 12, 2026, Foodwit sent ESHA a proposed supplemental protective order, using industry-standard terms and conditions, to govern production of source code. For more than two weeks, ESHA provided no comments on Foodwit's draft. The parties met and conferred on Friday, August 28, and Foodwit asked again for comments on its draft. ESHA refused to provide any comments on Foodwit's proposal, and stated that Foodwit's proposal was irrelevant because neither side had sought document production relating to source code. ESHA confirmed that Foodwit had met its obligation to meet and confer on this issue.

ESHA's sole excuse for avoiding source-code production was wrong. *Supra*; *see, e.g.*, *Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 14-1142, 2017 WL 714354, at *1 (D. Or. Feb. 21, 2017). Long before ESHA claimed it sought no source code, ESHA not only propounded requests calling for source-code production, but also *specifically sought Foodwit's source code* in its Request No. 16. ESHA now appears not to want the discovery it sought, perhaps because it knows that this code will show that Foodwit developed its own product, and did not steal anything from ESHA.

This Court has granted similar protective orders governing source code disclosure in trade secret cases. *E.g.*, *Vesta*, 2017 WL 714354, at *3; *Valmarc Corp. v. Nike, Inc.*, No. 21-1556, Docket No. 162 (D. Or. Dec. 21, 2023); *Opal Labs Inc. v. Sprinklr, Inc.*, No. 18-1192, Docket No. 50 (D. Or. May 1, 2019). ESHA has tactically refused to engage with or comment on Foodwit's proposal, waiving any right to do so. The Court should supplement the protective order in this action, Docket No. 44, using Foodwit's proposed supplement addressing source code production, submitted to the Court with this one-page statement and ESHA's responsive statement.