# Exhibit 3

Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com

*Attorneys for Plaintiff Trustwell*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

**ESHA RESEARCH, LLC., now known as TRUSTWELL,**

Plaintiff,

v.

**RLH ASSETS, LLC, doing business as FOODWIT, an Oregon limited liability company,**

Defendant.

Civil No. 3:25-cv-00880-AB

**DECLARATION OF TODD DOLINSKY IN SUPPORT OF (1) PLAINTIFF TRUSTWELL'S OPPOSITION TO DEFENDANT FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND (2) TRUSTWELL'S RESPONSE TO FOODWIT'S REQUEST TO UNSEAL DOCUMENTS**

**[ORAL ARGUMENT REQUESTED]**

**DECLARATION OF TODD DOLINSKY**

I, Todd Dolinsky, hereby declare as follows:

1. I am the Chief Product Officer for Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell"). I submit this declaration in support of Trustwell's opposition to Defendant RLH Assets, LLC dba Foodwit's ("Foodwit") motion to dismiss Trustwell's second amended complaint (Dkt. 47), as well as Trustwell's response to Foodwit's request to unseal documents (Dkt. 50). The facts stated herein are based on my own personal knowledge, and if called and sworn as a witness, I could and would competently testify concerning such matters.

2. I have reviewed the declaration of Matthew S. Warren in support of Foodwit's motion to dismiss Trustwell's second amended complaint (the "Warren Declaration," Dkt. 48), as well as the 600+ pages of exhibits attached to the Warren Declaration. Attached as exhibit 1 to the Warren Declaration is Trustwell's response to Foodwit's first set of interrogatories (Trustwell's 19-page "Trade Secret Identification").

3. I assisted in preparing Trustwell's Trade Secret Identification. I am aware that in both Trustwell's second amended complaint and its Trade Secret Identification, Trustwell asserts two types of trade secrets: 1) Trustwell's Genesis Foods software platform; and 2) Trustwell's master food and nutrition database, which is embedded in the Genesis Foods system. I am familiar with both types of trade secrets, and I work with them frequently in my role as Chief Product Officer, as well as the overall Genesis Foods platform and the embedded database.

4. Trustwell first introduced the Genesis Foods software platform in 1991. Over the following decades, Trustwell continually worked to update and improve the system. Trustwell launched the next generation of Genesis Foods in 2024, backed by its industry-leading master food and nutrition database, providing a state-of-the-art, all-in-one platform for nutrition analysis, regulatory compliance, and a host of other functions. Trustwell licenses access to and use of Genesis Foods to customers subject to strict terms, conditions, and protections, and generates substantial licensing revenue as a result. Trustwell could not maintain its licensing business, or the necessary market demand for Genesis Foods, if it publicly disclosed the related

trade secrets, portions of those trade secrets that might enable competitors to reverse engineer its products, or even a roadmap of the particular features and functionalities that make Genesis Foods so unique and valuable. I am aware that Foodwit licensed Genesis Foods, including the embedded database, from 2017 through 2024. Surely Foodwit would not have paid Trustwell substantial licensing fees every year for seven years for something that was publicly available. Trustwell's continuing licensing business, and the continuing market demand for Genesis Foods, demonstrates the continuing value and secrecy of its trade secrets relating to Genesis Foods and the embedded database.

5. I understand that, in its motion to dismiss Trustwell's second amended complaint, Foodwit argues that each of the Genesis Foods-related trade secrets listed in Trustwell's Trade Secret Identification has been publicly disclosed and therefore cannot be considered trade secrets. That argument is factually incorrect for all of the reasons below.

6. I further understand that Foodwit does <u>not</u> argue that Trustwell's master food and nutrition database has been publicly disclosed, and that Foodwit's public-disclosure argument is limited to Genesis Foods-related trade secrets. In fact, in reviewing the Warren Declaration and attached exhibits, I noticed that Foodwit is only arguing that the trade secrets reflected in paragraphs 1 through 25 of the *Genesis Foods portion* of the Trade Secret Identification have been publicly disclosed. Foodwit makes no such argument regarding the *database portion* of the Trade Secret Identification.

7. I found only a single reference in the Warren Declaration to Trustwell's master food and nutrition database, at paragraphs 247 through 250. Those paragraphs, along with the referenced exhibit 57, merely describe the existence of Trustwell's "master database" and the type of data it contains, including "over 160 nutritional components" for "more than 85,000 food items." There is no assertion or suggestion that the database itself has been disclosed publicly at any point or in any way. There also is no assertion or suggestion that any portion of the proprietary and trade secret compilation of data within the database has been disclosed publicly at any point or in any way. I believe the absence of any such assertions or suggestions in the

Warren Declaration effectively concedes the continuing confidentiality and trade secret status of Trustwell's master food and nutrition database.

8. The database portion of the Trade Secret Identification includes a particularized description of the steps in the process by which Trustwell creates its master database. The database includes a compilation of confidential and proprietary information that Trustwell has created or supplemented as well as a particular selection of information from vetted external sources like governmental agencies. This compilation dataset includes up to 172 data fields for more than 90,000 branded and generic foods and ingredients. Public disclosure of the specific steps that Trustwell takes to create this compilation dataset would enable Trustwell's competitors to reverse engineer the process and approximate the same dataset. At an absolute minimum, that would substantially reduce the value of Trustwell's master database because it no longer would be unique or proprietary.

9. In helping to prepare the Genesis Foods portion of the Trade Secret Identification, I tried to put together a comprehensive list of the trade secret features and functionalities that exist in the Genesis Foods platform. I did not intend or undertake to put together a list of all of the specific processes and methodologies that underly or enable those features and functionalities. That would have taken much more than 19 pages. It is my understanding that additional information regarding the specific, underlying processes and methodologies will be exchanged later in the course of this lawsuit. In other words, in helping to prepare the Genesis Foods portion of the Trade Secret Identification, my goal was to create a list of the features and functionalities that make Genesis Foods so unique and valuable, and which I understand will be explored further, later in the case. That is what I did, and that is what the Genesis Foods portion of the Trade Secret Identification represents.

10. In reviewing the Warren Declaration and attached exhibits, I note that substantially all of the public information that is referenced and attached as exhibits comes from what amount to user manuals for the Genesis Foods platform, including prior versions of the

Case 3:25-cv-00880-AB Document 163-1 Filed 12/26/25 Page 6 of 11

platform, which have been posted publicly on the Internet over the years. In my experience, it is common to find user manuals for software systems posted publicly on the Internet.

11. The public user manuals for the Genesis Foods platform that are referenced in the Warren Declaration and attached exhibits describe the existence of some of the features and functionalities listed in the Trade Secret Identification. Critically, however, the descriptions in the public user manuals do not disclose the specific, underlying processes and methodologies that constitute the actual trade secret information relating to each of the respective features and functionalities. In other words, publicly describing the *existence* of a given feature or functionality does not thereby disclose the specific, underlying process or methodology that enables that feature or functionality and makes it unique and valuable. Perhaps the best demonstration of this fact is the continuing market demand for Genesis Foods notwithstanding the public availability of its user manuals. Again, if competitors could use those public user manuals to recreate or reverse engineer the trade secret features and functionalities of Genesis Foods, they would do so, and market demand for Genesis Foods would crater. Because Genesis Foods remains one of the leading products, if not *the* leading product, in the industry, competitors obviously have not been able to recreate or reverse engineer the trade secret features and functionalities of Genesis Foods from the public user manuals.

12. This is no different than Coca-Cola advertising a new soda flavor. The advertisement certainly does not disclose the formula or recipe for the new flavor, which is the actual trade secret information that makes the new flavor unique and valuable. Even the ingredient label on the can does not disclose the trade secret formula. Nor can you reverse engineer the formula from the information in the ingredient label. So it is with user manuals. Describing the *existence* of various features and functionalities does not thereby disclose the specific, underlying trade secret processes and methodologies.

13. The Genesis Foods portion of the Trade Secret Identification, however, still provides a particularized list—a roadmap—of the most unique and valuable features and functionalities of Genesis Foods. It essentially distills those specific features and functionalities

that make Genesis Foods so unique and valuable. As a result, even though the Trade Secret Identification does not contain the specific underlying processes or methodologies, public disclosure of a roadmap of the most unique and valuable features and functionalities of Genesis Foods still would cause substantial harm to Trustwell's business because it would enable Trustwell's competitors to target and more effectively tailor their own products to compete with Genesis Foods. That would result in reduced market demand for Genesis Foods, and would substantially harm Trustwell's business and competitive standing in the industry.

14. I will now walk through in the following paragraphs several examples from the Warren Declaration where nothing more than the existence of a given feature or functionality is disclosed, and certainly nothing relating to the underlying process or methodology. Paragraphs 407 through 524 of the Warren Declaration discuss paragraph 12 of Trustwell's Trade Secret Identification, including subparagraphs 12(a) through 12(u). Paragraph 12 of the Trade Secret Identification discusses certain mathematical formulas that Genesis Foods automatically and dynamically calculates for various nutrients, and lists 21 examples of particular nutrients (in subparagraphs 12(a) through 12(u)) for which Genesis Foods "include[s] formulas." Paragraphs 407 through 524 of the Warren Declaration then repeatedly reference exhibits 85 through 87 as publicly disclosing each of the trade secrets listed in paragraph 12 of the Trade Secret Identification. But exhibits 85 through 87 merely list and describe the nutrients themselves. They do not disclose or contain any mathematical formulas nor do they discuss or disclose how exactly Trustwell dynamically calculates and recalculates the data. While exhibit 87 provides 10 examples of what particular nutrients contain, even that does not disclose any of the underlying formulas or dynamic calculation processes. And none of the exhibits disclose or contain the contents of the other 11 listed nutrients, let alone any of their underlying formulas or calculation processes. Those underlying processes that Trustwell utilizes for the various nutrients represent the actual trade secret information associated with the 21 nutrients listed in subparagraphs 12(a) through 12(u), as stated in the Trade Secret Identification. Publicly disclosing the existence of those 21 nutrients, or even what 10 of the nutrients contain, does not reveal any of the underlying

and trade secret calculation processes. In other words, just like a new Coke flavor, disclosing the existence of particular nutrients within Genesis Foods does not disclose or reveal the underlying trade secret information.

15. Paragraphs 240 through 246 of the Warren Declaration discuss paragraph 4 of Trustwell's Trade Secret Identification. Paragraph 4 of the Trade Secret Identification discusses options to export, among other things, ingredients from Genesis Foods. Paragraphs 240 through 246 of the Warren Declaration then reference exhibits 55 and 56 as publicly disclosing those export options. While the exhibits discuss the unremarkable fact that ingredients may be exported from Genesis Foods, including through what exhibit 55 (and paragraph 241) describes as "an EXL (ESHA) file," neither exhibit discloses what that trade secret filetype is, how it works, or anything else about it. The EXL filetype is a proprietary file format created by Trustwell as a new and efficient means to export ingredient and recipe data from Genesis Foods, particularly at scale. Once again, disclosing its existence does not reveal the underlying detail. The details of the filetype are a trade secret and remain confidential.

16. Paragraphs 383 through 398 of the Warren Declaration discuss paragraph 11(b) of Trustwell's Trade Secret Identification. Paragraph 11(b) of the Trade Secret Identification discusses various ways customers can search and filter within Genesis Foods, including by using "ESHA Code[s]." Paragraphs 383 through 398 of the Warren Declaration then reference exhibits 78 through 82 as purportedly disclosing Genesis Foods' search methodologies. But none of the exhibits disclose or reveal what ESHA Codes actually are, how they were created, or even the codes themselves. ESHA Codes are proprietary codes created by Trustwell to assist with identifying and searching certain items or components within Genesis Foods. Once again, disclosing the existence of ESHA Codes does not reveal the actual codes or their utility. The codes are a trade secret and remain confidential.

17. Paragraphs 911 through 931 of the Warren Declaration discuss paragraph 23 of Trustwell's Trade Secret Identification. Paragraph 23 of the Trade Secret Identification discusses a proprietary utility for importing and exporting database files to and from Genesis

Foods, called ESHAPort. Paragraphs 911 through 931 of the Warren Declaration reference exhibits 141 through 146 as publicly disclosing ESHAPort. While exhibits 141 through 146 discuss the existence of ESHAPort and explain various options it provides to customers for importing and exporting databases, none of the exhibits discloses or reveals the underlying methodologies by which ESHAPort processes and then imports or exports the data, particularly at scale. Again, disclosing the existence of ESHAPort and describing its functionality does not reveal the underlying processes that enable the functionality. Those underlying processes are the actual trade secret information represented by ESHAPort, and they remain confidential.

18. There are numerous other such examples throughout the Warren Declaration, like ESHASecurity, another proprietary utility that Trustwell created, that is only superficially discussed in the Warren Declaration, at paragraphs 932 through 941 and exhibits 147 through 149. While the exhibits discuss the existence of ESHASecurity and some of the security options it provides, they do not disclose the specific, underlying processes that enable those options. Similarly, the Warren Declaration and attached exhibits discuss the existence of various types of nutritional reporting functionalities that are available within Genesis Foods, but there is no disclosure of the specific, underlying processes or methodologies that enable those functionalities. This is no different than pointing to the ingredient label on a can of Coke and claiming that trade secret protection for the flavor formula is thereby waived.

19. In sum, the Warren Declaration and attached exhibits demonstrate only that Trustwell, through user manuals and related materials for different versions of Genesis Foods, has proudly advertised the features and functionalities of its system over the years. Had those user manuals actually disclosed the trade secrets that enable those features and functionalities and make Genesis Foods unique and valuable, customers and competitors, including Foodwit, surely would have recreated or reverse engineered the system long ago to create competing systems and avoid having to pay Trustwell substantial licensing fees.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I executed this declaration on December 9, 2025 in Chapel Hill, North Carolina.

Todd Dolinsky

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of December, 2025, I caused to be served the foregoing **DECLARATION OF TODD DOLINSKY IN SUPPORT OF (1) PLAINTIFF TRUSTWELL'S OPPOSITION TO DEFENDANT FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND (2) TRUSTWELL'S RESPONSE TO FOODWIT'S REQUEST TO UNSEAL DOCUMENTS** on the following party via the following method(s):

P. Andrew McStay, Jr.
Email: andymcstay@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
Telephone: +1 (503) 241-2300
Facsimile: +1 (503) 778-5299

*Attorneys for Defendant*
*RLH Assets, LLC d/b/a Foodwit*

by:

☐ U.S. Postal Service, ordinary first class mail
☒ electronic service
☐ other (specify) Email

**JONES DAY**

*s/ Cary D. Sullivan*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email: btalcott@dunncarney.com