P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenllp.com
25-656@cases.warrenllp.com

*Attorneys for RLH Assets, LLC d/b/a Foodwit*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, LLC, an Oregon limited liability company,<br>Plaintiff,<br>v.<br>RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br>Defendant. | Case No. 3:25-cv-00880-AB<br>**FOODWIT'S OPPOSITION TO TRUSTWELL'S MOTION TO COMPEL INSPECTION OF FOODWIT'S WORKBENCH PLATFORM**<br>**BEFORE THE SPECIAL MASTER** |
| RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br>Plaintiff,<br>v.<br>ESHA RESEARCH, LLC, an Oregon limited liability company,<br>Defendant. | Case No. 3:25-cv-00656-AB<br>**FOODWIT'S OPPOSITION TO TRUSTWELL'S MOTION TO COMPEL INSPECTION OF FOODWIT'S WORKBENCH PLATFORM**<br>**BEFORE THE SPECIAL MASTER** |

## INTRODUCTION

Foodwit offered a reasonable inspection of Workbench. Trustwell's demands are unreasonable: they would require Foodwit to create documents for discovery, and would allow Trustwell to manufacture evidence, both in violation of Rule 34. The Court should allow Trustwell to inspect Workbench as Foodwit offered, not as Trustwell demanded.

## ARGUMENT

### I. The Inspection Cannot Require Foodwit to Create Documents

"Rule 34 only requires a party to produce documents that are already in existence." *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000). "A party is not required 'to prepare, or cause to be prepared,' new documents solely for their production." *Id.* (quoting *Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co.*, 576 F. Supp. 511, 513 (W.D. Pa. 1983)); *see, e.g.*, *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("A party, however, is not required to create a document where none exists."); *Goolsby v. Carrasco*, No. 09-1650, 2011 WL 2636099, at *8 (E.D. Cal. July 5, 2011); *Robinson v. Adams*, No. 08-1380, 2011 WL 2118753, at *20 (E.D. Cal. May 27, 2011). Trustwell's requested inspection would violate this rule.

Trustwell's notice of inspection requested "access to inspect," among other things, "[a]ll versions of the Workbench platform, including but not limited to live and fully functional client versions and iterations thereof, development or beta versions, and any specialized or customized versions." Sullivan Decl. Ex. A. In its objections to this notice of inspection, Foodwit explained:

> Foodwit has already collected source code for all production versions of the Workbench platform through August 30, 2026, its date of collection. Foodwit's source code production includes all functionality for all production versions of the Workbench platform through August 30, 2026. Foodwit's source code production also includes all production versions of underlying or embedded databases or other data sources utilized by the Workbench platform, including but not limited to food and nutrition databases and data, through August 30, 2026. Foodwit remains prepared to produce this source code upon entry of an appropriate protective order. Foodwit provided ESHA with its proposed

> source code protective order on August 12, 2026, but ESHA declined to respond and has opposed entry of this protective order. Once the Court has entered an appropriate protective order, Foodwit will continue to supplement its source code production as it releases new production versions of the Workbench platform or the underlying or embedded databases or other data sources utilized by the Workbench platform, including but not limited to food and nutrition databases and data.
>
> In addition to its source code production, Foodwit will allow inspection of the current production version of the Workbench platform as of the date of inspection.

Sullivan Decl. Ex. B. at 2-3. Trustwell's motion claims that Foodwit is seeking to "limit" the inspection, but that is not so: Foodwit is simply providing the documents it has available.

Foodwit's Workbench product is software as a service, accessible through a web browser; users cannot download an executable file such as, for example, for the Windows version of Microsoft Word. Foodwit maintains the Workbench source code in a source code repository, from which it can extract the full source code including all functionality for any production version of the Workbench platform. Foodwit's source code repository also includes all production versions of underlying or embedded databases or other data sources utilized by the Workbench platform. When Foodwit updates Workbench to a new production version, the new source code and database are available to users through the web interface; the old source code and database remain in Foodwit's source code repository. One production version is available as software as a service, while all production versions are always available as source code.

Trustwell's motion appears to ask the Special Master to require Foodwit to make all versions of Workbench, both production and non-production, available as software as a service. But Foodwit has only one production environment, through which it provides the current production version of Workbench to its customers, and which it already agreed to make available to Trustwell for inspection. Trustwell's apparent request that all versions of Workbench, both production and non-production, be available as software as a service would require Foodwit to

construct an additional environment for each version, including a compatible database state, runtime configuration, and other dependencies necessary for that version to operate. In other words, it would require Foodwit "to prepare, or cause to be prepared, new documents solely for their production," which Rule 34 does not allow, and which would be a significant burden on Foodwit. *Alexander*, 194 F.R.D. at 310. Foodwit's proposed inspection would provide Trustwell the ability to determine all of the functionality, including the database, of each production version of Workbench, without requiring Foodwit to create documents in violation of Rule 34. Trustwell bizarrely claims that "source code is probative of nothing in this case," Mot. at 8 n.1, but source code *controls the function of an application*, and thus review of Workbench source code allows a complete understanding of all functions in the corresponding version of Workbench. For versions earlier than the current production version, source code is not just the best and most complete source of information about functionality, but the only one available under Rule 34. *See supra.* The Court should allow inspection as Foodwit offered.

## II. The Inspection Cannot Become an Unsworn Deposition

Because inspections are more invasive than other forms of Rule 34 discovery, "the degree to which the proposed inspection will assist the moving party and the search for truth must be weighed against the concordant hardships and hazards created by the inspection." *E.E.O.C. v. U.S. Bakery*, No. 03-64, 2004 WL 1307915, at *2 (D. Or. Feb. 4, 2004) (citing *Belcher v. Bassett Furniture Indus. Inc.*, 588 F.2d 904, 908 (4th Cir. 1978)). One such danger is the "roving deposition," which can be "taken without notice" from "persons who were not sworn" and "without any right by the defendant to make any objection to the questions asked." *United States v. Territory of the Virgin Islands*, 280 F.R.D. 232, 237 (D.V.I. 2012) (quoting *Belcher*, 588 F.2d at 907); *see, e.g.*, *Sampson v. Centene Corp.*, No. 23-1134, 2026 WL 1453727, at *2 (D. Del. May

22, 2026); *E.E.O.C. v. Vicksburg Healthcare, LLC*, No. 13-895, 2015 WL 1821581, at *5 (S.D. Miss. Apr. 22, 2015). To prevent these dangers, Foodwit offered an inspection if, "[i]n order to prevent the inspection from becoming an unsworn deposition, there will be no recording of the inspection in any medium." Sullivan Decl. Ex. B at 3. Trustwell's motion insists that it "be permitted to record the inspection," thus allowing for exactly the kind of unsworn deposition that the law does not allow. Trustwell cannot use a Rule 34 inspection either to question Foodwit representatives, or to allow its expert to opine, without the normal constraints on such opinions, about Workbench. The Court should not permit recording of the inspection.

## III. Trustwell's Expert Cannot Create 'Evidence' That Appears to Come From Foodwit

Trustwell further asks the Special Master to allow it to generate "screenshots, printouts, downloads, or other records of the inspection." Mot. at 9. As the motion confirms, Trustwell wishes to create "evidence of the inspection." *Id.* But anything Trustwell creates would not be evidence of anything related to Foodwit, because it would be created by Trustwell's expert and not Foodwit. For example, Workbench allows users to add new ingredients to their individual databases, and use those ingredients in generating food labels. Under Trustwell's proposed inspection protocol, its expert could bring a list of ingredients from Trustwell's own database, input them into Workbench, use them to generate a food label, and Trustwell could then use this food label to accuse Foodwit of misappropriation. Once Trustwell's expert has touched the computer, any outputs from that computer should have no association with Foodwit, because they come from Trustwell's expert. But they will *appear* to come from Foodwit, and Trustwell could use them against Foodwit, even if its expert manipulates Workbench as no ordinary user would. There is no way to avoid this problem except by prohibiting screenshots, as Foodwit has proposed. The Special Master should adopt Foodwit's proposed protocol.

**IV. Trustwell's Expert Must Go Through a Reasonable Verification Process**

Foodwit's protocol stated that, "[i]n order to prevent misuse of competitive information, the Court will enter a supplemental protective order barring information from this inspection from anyone other than outside counsel of record and pre-approved independent consultants or expert witnesses who have executed an agreement to be bound to the Court's protective order and supplemental protective order." Sullivan Decl. Ex. B at 3. Trustwell's motion does not address this point, but assumes its unnamed expert will have full access to Workbench. *See generally* Mot. Under the current protective order, the expert could be anyone, including a long-time Trustwell employee, temporarily on leave, who will return to Trustwell's employ the day after the inspection. *See* -880 Docket No. 44 at 4. Trustwell knows who its expert is, since it can give his or her available dates. *See* Mot. at 10. But Trustwell coyly declines to reveal the expert's identity, reinforcing Foodwit's view that Foodwit would find the expert objectionable.

Recognizing the risk of competitive disclosure through experts, district courts issue model orders that require pre-approval of experts. *See, e.g.*, Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (N.D. California), available at https://cand.uscourts.gov/sites/default/files/documents/-ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.pdf at 11. If Trustwell's expert has no ties to Foodwit's competitors, Trustwell has nothing to worry about and will not object to such a provision. If Trustwell objects, the Special Master will know it has something to hide. In either case, the Special Master should require approval of Trustwell's experts as well as Foodwit's, to prevent the risk of competitive disclosure.

## V. There Is No "Most-Privileged User Access" to Workbench

Trustwell's motion seeks "most-privileged user access" to Workbench. Mot. at 10. The Special Master can deny this request simply because it does not appear in Trustwell's notice of inspection. Should the Special Master consider this request in any event, he can quickly deny it, because it does not exist. Instead, different Workbench accounts have access to different customer databases: accounts associated with Customer A have access to Customer A's database, and accounts associated with Customer B have access to Customer B's database. But what customers put in their own databases is neither relevant to any claims in this action, nor proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(2). Foodwit's protocol will provide Trustwell with a new customer account, which has access to the default databases provided by Foodwit. This is all Trustwell needs to conduct a reasonable inspection, and all it can obtain under the rules of discovery.

## VI. Trustwell Should Get Only One Inspection

Litigants usually wait to seek inspections until they have taken other discovery, so that they know what they are looking for in the inspection. Trustwell has refused to review Foodwit's source code, and has not yet taken any depositions of Foodwit personnel. Instead, Trustwell has chosen to do the inspection first. Having made this choice, Trustwell cannot later claim that it has discovered something in discovery that requires another inspection. "[I]t is neither unusual nor unjust for a party to be bound by its litigation decisions," and Trustwell must be bound to this one. *Indivior Inc. v. Dr. Reddy's Laboratories, S.A.*, 930 F.3d 1325, 1341 (Fed. Cir. 2019). Multiple inspections would unduly burden Foodwit; multiple inspections due to Trustwell's litigation choice would do so unfairly. The Special Master should allow only one inspection.

## VII. Trustwell Cannot Have An Unlimited Inspection

Trustwell's demand sought an inspection with no time limit. Sullivan Decl. Ex. A at 2. In response, Foodwit proposed four hours. Sullivan Decl. Ex. B at 3. In its motion, Trustwell demands an unlimited inspection, based on the "many versions and iterations of the platform." Mot. at 9. But as Foodwit has explained, *see supra* § I, only the current production version is available as software as a service; the remaining production versions are available as source code. Foodwit has not found any cases allowing an inspection to occupy more than one day, and Trustwell has not cited any. Although Foodwit believes that four hours is more than sufficient, at most Trustwell should receive seven hours of inspection time during one day, the same amount as a deposition under Fed. R. Civ. P. 30(d)(1).

## IX. Foodwit is Available on December 1, 2026

Trustwell proposed two date ranges, November 16-18 and December 1-3. Of those dates, Foodwit is available on December 1.

## CONCLUSION

The Special Master should order an inspection according to Foodwit's protocol, Sullivan Decl. Ex. B, to occur on December 1 or another date mutually agreed by the parties.

Date: October 30, 2026

Respectfully submitted,

*<u>/s/ P. Andrew McStay, Jr.</u>*
P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)

WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenllp.com
25-656@cases.warrenllp.com

*Attorneys for RLH Assets, LLC d/b/a Foodwit*