P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenllp.com
25-656@cases.warrenllp.com

*Attorneys for RLH Assets, LLC d/b/a Foodwit*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, LLC, an Oregon limited liability company,<br>Plaintiff,<br>v.<br>RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br>Defendant. | Case No. 3:25-cv-00880-AB<br>**FOODWIT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**<br>**BEFORE THE SPECIAL MASTER** |
| RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br>Plaintiff,<br>v.<br>ESHA RESEARCH, LLC, an Oregon limited liability company,<br>Defendant. | Case No. 3:25-cv-00656-AB<br>**FOODWIT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**<br>**BEFORE THE SPECIAL MASTER** |

## INTRODUCTION

Despite asserting over one hundred individual trade secrets in this litigation, Trustwell has refused to answer basic discovery regarding the development, disclosure, and measures taken to maintain the secrecy of its alleged trade secrets. Trustwell cannot use the sheer breadth of its own claims as a shield against fulfilling its discovery obligations, nor can it evade production by pointing to inapplicable objections or irrelevant usage records. Accordingly, Foodwit requests that the Special Master compel Trustwell to produce full and complete discovery responses within fourteen days of its order.

## BACKGROUND

On September 9, 2025, Trustwell served its trade secret disclosure, providing Foodwit with a nineteen-page list of the "trade secrets in this action" that Trustwell "asserts that Foodwit misappropriated." No. 25-880, Docket No. 48-1, Ex. 2 at 3; *see generally id.* On August 21, 2026, Foodwit propounded its second set of interrogatories and first set of requests for production. Exs. A; B. On September 21, 2026, Trustwell served its responses to both sets of discovery. Exs. C; D. Trustwell objected to every request, but responded to Request Nos. 9-11, which seek information about disclosure of the alleged trade secrets, that it would "produce its form license agreements and confidentiality agreements for the period 2017 through present." Ex. D at 9-11. Trustwell responded to Request No. 15 and 16, which seek similar information, that it "refers Foodwit to its responses to Request Nos. 9-11." *Id.* at 13-14. Trustwell responded to Request Nos. 17, 18 and 26, which seek information about measures taken to ensure the secrecy of the asserted trade secrets, that it "refers Foodwit to its responses to Request Nos. 6, 9-11." But although Trustwell responded to Request No. 6, which seeks "All software logs, access logs, audit trails, or usage records concerning Foodwit or any of its employees' alleged

access to or use of the Genesis Foods product," that it would "produce reasonably available, relevant and responsive, non-privileged documents within its possession, custody, and control," *id.* at 14-15, this is not responsive to Request Nos. 17, 18 or 26, and Trustwell has yet to produce a single document in this consolidated action.

Trustwell also objected to every interrogatory that "Foodwit's interrogatories contain numerous discrete subparts that should each be counted as a separate interrogatory, and when so counted," Foodwit's interrogatories "exceed the permissible number in the aggregate." Ex. C at 3-12. Trustwell refused to provide any substantive responses to Interrogatory Nos. 3-6 under this objection. *Id.* at 4-8.

On October 13, Foodwit informed Trustwell that its objections and responses to Request Nos. 9-11, 15-18, and 26 are improper, and requested that it "confirm that ESHA will produce documents responsive to the above requests or provide your soonest availability to confer on Foodwit's motion to compel." Ex. E. On October 16, Foodwit informed Trustwell that its responses to Interrogatory Nos. 3-6 are also deficient because Trustwell improperly objects to the subparts of each interrogatory, which depends entirely on the number of trade secrets asserted. *See* Ex. F. Foodwit and Trustwell met and conferred on October 20, where Trustwell refused to produce documents to the requests as written or provide a date certain to supplement its responses to Foodwit's interrogatories.

## <u>ARGUMENT</u>

### I. Trustwell Must Provide Substantive Responses to Foodwit's Interrogatories

#### A. Foodwit's Interrogatories Seek Relevant Information Concerning Disclosure of Trustwell's Alleged Trade Secrets

A propounding party may "move for an order compelling an answer, designation, production, or inspection," Fed. R. Civ. P. 37(a)(3)(B), and "'an evasive or incomplete disclosure,

answer, or response must be treated as a failure to disclose, answer, or respond.'" *Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 14-1142, 2016 WL 1337318, at *1 (D. Or. Apr. 4, 2016) (quoting Fed. R. Civ. P. 37(a)(4)). The disclosure of Trustwell's trade secrets is an essential element of Trustwell's claims and Foodwit's defenses, which Foodwit seeks through Interrogatory Nos. 3-6:

- "For each trade secret you allege Foodwit misappropriated, describe with specificity all bases for your claim that it is a trade secret." Interrogatory No. 3, Ex. A at 4.
- "For each trade secret you allege Foodwit misappropriated, describe with specificity all bases for your claim that Foodwit misappropriated the trade secret." Interrogatory No. 4, Ex. A at 4.
- "For each trade secret you allege Foodwit misappropriated, describe with specificity how, when, where, and by whom it was designed and developed, including an identification of every individual who participated in the design or development of the trade secret." Interrogatory No. 5, Ex. A at 4.
- "For each trade secret you allege Foodwit misappropriated, identify every individual who has or had access to or knowledge of the trade secret." Interrogatory No. 6, Ex. A at 4.

Foodwit's interrogatories are relevant as each interrogatory goes to the secrecy of the underlying trade secrets. Courts routinely compel information concerning the disclosure of a trade secret, because whether a trade secret is actually secret is an essential element of a misappropriation claim. *E.g.*, *Stemcell Techs. Canada Inc. v. StemExpress, LLC*, No. 21-1594, 2022 WL 4021905, at *2 (N.D. Cal. Sept. 3, 2022) (compelling discovery concerning "any customers to whom it disclosed its trade secrets" and "how each of its ten trade secrets derive economic value from not being known to others."); *Mattson Tech., Inc. v. Applied Materials, Inc.*, No. 23-6071, 2026 WL 1303361, at *6 (N.D. Cal. May 12, 2026) (compelling discovery concerning actions "taken to safeguard, defend, and/or maintain the secrecy" of each trade secret and identification of persons "who at any time had access" to the trade secrets at issue). Trustwell must provide substantive responses to these critical issues.

**B. Foodwit's Interrogatories Do Not Exceed the Rule 33(1) Limit**

Trustwell's objection that Foodwit's interrogatories are multipart has no bearing in this action where it has asserted over one hundred individual trade secrets. "While Rule 33 does not define the term 'discrete subparts,' courts have construed it to mean that 'interrogatory subparts are to be counted as one interrogatory'" where "they are logically or factually subsumed within and necessarily related to the primary question." *Olen Props. Corp. v. ACE Am. Ins. Co.*, No. 15-2116, 2017 WL 11635014, at *3 (C.D. Cal. Jan. 30, 2017) (quoting *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)). Foodwit's interrogatories request information on a trade-secret-by-trade-secret basis, and are "not improper" given "the logical relation between the various requested information in each main question." *Slep-Tone Entm't Corp. v. Harrison Bar & Grill*, No. 13-281, 2013 U.S. Dist. LEXIS 205965, at *9 (D. Or. June 28, 2013).

In the trade secret context, courts frequently compel responses to interrogatories that request information about each trade secret. For example, in *Mattson*, the Northern District of California overruled Mattson's objections that interrogatories seeking information about "each trade secret" are compound because Mattson "may fairly be held to answer Applied's interrogatories seeking information on a trade-secret by trade-secret basis." 2026 WL 1303361, at *6; *see, e.g.*, *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 15-1370, 2017 WL 11637729, at *1 (N.D. Cal. Mar. 9, 2017) ("Plaintiffs themselves have put the individual 25 secrets into play, and Facebook is entitled to get interrogatory responses that track all 25 individually."); *Stemcell*, 2022 WL 4021905, at *2 (compelling StemExpress to amend its interrogatory response because it "did not provide responses specific to each trade secret."). The same is true in patent cases involving multiple protected properties. *See, e.g.*, *Yufa v. Hagh Ultra Analytics*, No. 09-3022, 2014 U.S. Dist. LEXIS 186172, at *2-3 (D. Or. Mar. 4, 2014) (finding that interrogatories

requesting information about multiple products and multiple patents are "not compound."); *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 296 (N.D. Cal. 2016) (same). Trustwell must promptly supplement its responses to Interrogatory Nos. 3-6.

### C. Trustwell Has Waived its Numerosity Objections to Foodwit's Interrogatories

Trustwell has likewise waived its objection to the number of interrogatories in Foodwit's second set by partially answering some requests in that set and refusing others. Trustwell provided further responses to Interrogatory Nos. 2 and 7-10. *See id.* at 4-12. But under Trustwell's faulty arithmetic, Foodwit would have exhausted the limit well before Interrogatory No. 7, yet Trustwell responded in part to Interrogatories Nos. 7 through 10. "When a party exceeds the rog limit set by the district court or Rule 33, the responding party is not free to choose the interrogatories to which it will respond," nor "should the responding party refuse to answer any rogs until the numeric dispute is resolved." *Olen*, 2017 WL 11635014, at *3; *see also IMA N. Am., Inc. v. Marlyn Nutraceuticals, Inc.*, No. 06-344, 2007 WL 2391099, at *4 (D. Ariz. Aug. 20, 2007) (numerosity objection waived where responding party provided responses); *TIW Holdings LLC v. Hotbox Farms LLC*, No. 24-126, 2025 WL 1112840, at *3 (D. Or. Apr. 15, 2025) (finding that "defendant did not waive numerosity objections" because it responded "to what it considered the first twenty-five interrogatories before objecting to the rest."). Trustwell cherry-picked the interrogatories it would respond to but should have answered what it considered "the first 25 interrogatories" to preserve this objection.

## II. Trustwell Must Produce Documents About Disclosure of its Alleged Trade Secrets

Foodwit's Request for Production Nos. 9-11 and 18 seek information concerning Trustwell's disclosure of its alleged trade secrets:

- "All documents and communications concerning your disclosure of any element of any trade secret or other trade secret information you allege Foodwit misappropriated to any third party." Request No. 9, Ex. B at 4.

- "All documents and communications concerning any agreements between you and any third party concerning any element of any trade secret or other trade secret information you allege Foodwit misappropriated to any third party." Request No. 10, Ex. B at 5.

- "All documents and communications concerning license agreements between you and any third party concerning any product you allege contains, uses, incorporates, or otherwise reflects any trade secret you allege Foodwit misappropriated, including the Genesis Foods product." Request No. 11, Ex. B at 5.

- "Documents sufficient to identify all persons and entities with access to each trade secret you allege Foodwit misappropriated." Request No. 18, Ex. B at 6.

These requests seek documents that are relevant for the same reasons as Foodwit's Interrogatory Nos. 3-6. *See supra* § I.A. Trustwell's refusal to provide anything other than documents concerning Foodwit's access or use and its "form license agreements and confidentiality agreements for the period 2017 through present" is improper. Trustwell's "form license agreements," which it has yet to produce, will only show the terms of its "form" contracts, not the who, what, when, where, and why of any disclosure. Those agreements would further not include any information about Trustwell's disclosure of its alleged secrets to non-contracting parties, such as employees or contractors, attendees at software demos or trainings, or anyone else under any circumstances other than under a form agreement. *See supra* § I.A. For example, in *ESHA Research, Inc. v. Cronometer Software, Inc.*, Trustwell accused Cronometer of stealing the same database trade secrets asserted in this action, but Cronometer provided evidence showing that in 2015, Trustwell knew and had allowed "the data to be placed on the Internet for millions of Cronometer users"; as the data was publicly available through the app, this disclosure renders the trade secrets no longer secret. No. 24-1586, Docket No. 20 at 3-4 (D. Or. Mar. 18, 2025). Trustwell's narrow production would exclude this highly relevant information because

Trustwell improperly applies a 2017 date cutoff in response to each of the above requests. Just because Foodwit became a customer in 2017 does not make Trustwell's conduct and disclosure regarding its alleged trade secrets irrelevant to its claims. If Trustwell disclosed any alleged secret at any time before 2017, it was not a secret when Foodwit allegedly became aware of it. Whether any information Trustwell claims it disclosed to Foodwit was in fact a trade secret depends on what Trustwell did to protect it before and after Foodwit learned of it. The Special Master should compel responses to Request Nos. 9-11 and 18.

## III. Trustwell Must Produce Information regarding the Steps it Has Taken to Maintain the Secrecy of its Alleged Trade Secrets

The information sought in Request Nos. 15, 16, 17, and 26 concerns the steps that Trustwell has taken to ensure the secrecy of its alleged trade secrets and the documents behind Trustwell's allegations: records of which employees accessed the alleged trade secrets and when, the instructions and reminders Trustwell gives its employees, and the executed agreements that Trustwell contends are substantially similar to Foodwit's:

- "All documents and communications concerning any measures you have taken to maintain the secrecy of each trade secret you allege Foodwit misappropriated." Request No. 15, Ex. B at 5.
- "All agreements and communications concerning confidentiality, non-disclosure, or protection of each trade secret you allege Foodwit misappropriated, including all employee agreements." Request No. 16, Ex. B at 6.
- "All documents and communications concerning your allegation that you 'track[] and limit[] employee access to such information, providing it only to the extent necessary to perform their job functions' and 'regularly instructs and repeatedly reminds its employees of the highly sensitive and confidential nature of its Trade Secrets' as alleged in paragraph 25 of your second amended complaint in this action." Request No. 17, Ex. B at 6.
- "All documents and communications concerning the 'agreements that contain confidentiality provisions and other protections substantially similar to those contained in Foodwit's License Agreement' as alleged in paragraph 25 of your second amended complaint in this action." Request No. 26, Ex. B at 7.

The steps that Trustwell takes to maintain the secrecy of its trade secrets are relevant to Trustwell's claims and Foodwit's defenses for the same reasons explained above. *See supra* § I.A. Likewise, Trustwell's temporal limit is improper for the same reasons explained above. *See supra* § II.

Trustwell cannot withhold documents containing direct evidence supporting or negating its own claims and allegations. *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (parties must "have some factual basis for their claims and allegations"). Trustwell's complaint alleges that it "tracks and limits employee access to such information, providing it only to the extent necessary to perform their job functions," that it "regularly instructs and repeatedly reminds its employees of the highly sensitive and ok confidential nature of its Trade Secrets," and that it uses "agreements that contain confidentiality provisions and other protections substantially similar to those contained in Foodwit's License Agreement." Docket No. 46 ¶ 25. But Trustwell refuses to provide even basic information such as the manner in which it allegedly "tracks and limits" employees' access to its alleged trade secrets, as documents concerning Foodwit's usage of the platform and Trustwell's "form license agreements and confidentiality agreements" have nothing to do with its internal tracking and policies. A plaintiff "cannot baldly claim it suffered damages as a result of the alleged copying of documents and then claim to be baffled by a request that it disclose facts suggesting that any documents have independent economic value." *Lonquist Field Service, LLC v. Sorby*, No. 21-1035, 2021 WL 4967041, at *5 (D. Kan. Oct. 26, 2021); *see also Com. Fire Prot., LLC v. Pigg*, No. 24-922, 2025 WL 593574, at *5 (D. Or. Feb. 21, 2025) ("The secrecy 'inquiry is a highly fact-specific one'") (quoting *Alt. Legal Sols., Inc. v. Ferman Mgmt. Servs., Corp.*, No.

07-880, 2009 WL 10733692, at *11 (D. Or. May 5, 2009)). The Special Master should compel Trustwell to produce documents responsive to Foodwit's Request Nos. 15, 16, 17, and 26.

## CONCLUSION

For all the foregoing reasons, the Special Master should compel Trustwell to respond to Foodwit's Interrogatory Nos. 3-6 and Requests for Production Nos. 9-11, 15-18 and 26.

Date: October 30, 2026

Respectfully submitted,

*/s/ P. Andrew McStay, Jr.*

P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenllp.com
25-656@cases.warrenllp.com

*Attorneys for RLH Assets, LLC d/b/a Foodwit*