# Exhibit E

Warren LLP

Warren LLP
2261 Market Street, No. 606
San Francisco, California 94114

TEL +1 (415) 895 2940
FAX +1 (415) 895 2964
warrenllp.com

October 13, 2026

**By Electronic Mail**

Cary D. Sullivan
Jones Day
3161 Michelson Drive, Suite 800
Irvine, California, 92612
carysullivan@jonesday.com

Brian R. Talcott
Dunn Carney LLP
851 SW Sixth Avenue, Suite 1500
Portland, Oregon, 97204
btalcott@dunncarney.com

**Re: ESHA Research, LLC v. RLH Assets, LLC, No. 25-880 (D. Oregon)**
**RLH Assets, LLC v. ESHA Research, LLC, No. 25-656 (D. Oregon)**

Dear Cary:

I write to confer regarding ESHA's refusal to produce documents concerning the secrecy of its alleged trade secrets in this action, or ESHA's attempts, if any, to protect them. This discovery concerns core elements of ESHA's claims and Foodwit's defenses, as well as Foodwit's claims concerning ESHA's conduct. Yet ESHA's September 21, 2026, responses to Foodwit's First Set of Requests for Production refuse nearly all discovery into these elements. This is improper.

Foodwit's request nos. 9-11 and 18 seek documents concerning ESHA's disclosure of its alleged trade secrets. In response to all of these requests, ESHA refused to provide anything other than documents concerning Foodwit's access or use and ESHA's "form license agreements and confidentiality agreements for the period 2017 through present." But ESHA's "form license agreements" only show the terms of its "form" contracts, not the who, what, when, where, and why of any disclosure. Those agreements would further not include any information about ESHA's disclosure of its alleged secrets to non-contracting parties, such as employees or contractors, attendees at software demos or trainings, or anyone else under any circumstances other than under a form agreement. ESHA's responses take the view that, had ESHA printed its alleged trade secrets in a newspaper, that printing would not fall within the scope of discovery in this action.

Likewise, Foodwit's request nos. 15, 16, 17, and 26 seek information regarding the specific steps ESHA has taken to keep any trade secrets it alleges in this action secret. This information is directly relevant to ESHA's claims, and Foodwit's defenses; indeed ESHA's complaint alleges that it "tracks and limits employee access to such information, providing it only to the extent necessary to perform their job functions," that it "regularly instructs and repeatedly reminds its employees of the highly sensitive and confidential nature of its Trade Secrets," and that it uses "agreements that contain confidentiality provisions and other protections substantially similar to those contained in Foodwit's License Agreement." Second Amended Complaint ¶ 25. These requests seek the documents behind ESHA's allegations: records of which employees accessed the alleged trade secrets and when, the instructions and reminders ESHA gives its employees, and the executed agreements, including employee agreements, that ESHA contends are substantially similar to Foodwit's. In response to these requests, ESHA agrees only to produce documents concerning Foodwit's access or use and "form license agreements and confidentiality agreements." But Foodwit's usage records have nothing to do with ESHA's attempts, if

any, to maintain secrecy of its alleged trade secrets. ESHA refuses to provide even basic information such as the manner in which it allegedly "tracks and limits" employees' access to its alleged trade secrets. ESHA cannot withhold documents containing direct evidence supporting or negating its own claims and allegations. *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP,* 256 F.R.D. 678, 682 (C.D. Cal. 2009) (parties must "have some factual basis for their claims and allegations").

ESHA further improperly applies a 2017 date cutoff in response to each of the above requests. Just because Foodwit became a customer in 2017 does not make ESHA's conduct and disclosure regarding its alleged trade secrets irrelevant to its claims. If ESHA disclosed any alleged secret at any time before 2017, it was not a secret when Foodwit allegedly became aware of it. Whether any information ESHA claims it disclosed to Foodwit was in fact a trade secret depends on what ESHA did to protect it both before and after Foodwit learned of it.

"[A] trade secret must be actually secret" and "the owner of the trade secret must have taken reasonable measures to maintain the secrecy of the information." *GlobalTranz Enters. Inc. v. Murphy*, No. 18-04819, 2021 WL 1163086, at *11 (D. Ariz. Mar. 26, 2021). Information about the steps, if any, that ESHA has taken to "keep such information secret" are essential elements of the ESHA's prima facie case and Foodwit's defenses. 18 U.S.C. § 1839(3)(A). Because it is highly relevant, courts routinely compel the precise discovery Foodwit seeks. E.g. *Stemcell Technologies Canada Inc. v. StemExpress, LLC*, No. 21-CV-01594, 2022 WL 4021905, at *1, 2 (N.D. Cal. Sept. 3, 2022) (compelling discovery concerning "any customers to whom it disclosed its trade secrets" and "how each of its ten trade secrets derive economic value from not being known to others."). A plaintiff "cannot baldly claim it suffered damages as a result of the alleged copying of documents and then claim to be baffled by a request that it disclose facts suggesting that any documents have independent economic value." *Lonquist Field Service, LLC v. Sorby*, No. 21-1035, 2021 WL 4967041, at *5 (D. Kan. Oct. 26, 2021); *see also WWMAP, LLC v. Birth Your Way Midwifery*, 711 F. Supp. 3d 1313, 1322 (N.D. Fla. 2024) ("assessing the reasonableness of measures taken to ensure secrecy is a factually intensive endeavor"); *Com. Fire Prot., LLC v. Pigg*, No. 3:24-CV-00922, 2025 WL 593574, at *5 (D. Or. Feb. 21, 2025) ("The secrecy 'inquiry is a highly fact-specific one'") (citing, *Alt. Legal Sols., Inc. v. Ferman Mgmt. Servs., Corp.*, No. 07-880, 2009 WL 10733692, at *11 (D. Or. May 5, 2009).

Please confirm that ESHA will produce documents responsive to the above requests or provide your soonest availability to confer on Foodwit's motion to compel.

Thank you for your continued time and courtesy in this matter.

Very Truly Yours,

Erika H. Warren