Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
Lauren E. Dutkiewicz (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com
E-mail: ldutkiewicz@jonesday.com

*Attorneys for Plaintiff*
TRUSTWELL

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

ESHA RESEARCH, LLC, now known as TRUSTWELL,

Plaintiff,

v.

RLH ASSETS, LLC, doing business as FOODWIT, an Oregon limited liability company,

Defendant.

Civil No. 3:25-cv-00880-AB consolidated with 25-cv-00656-AB

**TRUSTWELL'S OPPOSITION FOODWIT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**

**BEFORE THE SPECIAL MASTER**

## INTRODUCTION

Foodwit's motion is the latest example of its unreasonable approach to discovery in this case. Foodwit propounded facially overbroad, unduly burdensome, and impermissibly compound interrogatories and document requests. It demands that Trustwell provide trade-secret-by-trade-secret responses for more than one hundred trade secrets, refuses to accept any limit on the temporal scope of its requests, and insists that Trustwell identify, and produce all communications and documents with, every employee or third party who has ever had access to its trade secrets over more than thirty years. These requests are plainly improper and, like the 1,019 RFAs that Foodwit served concurrently with them, are designed solely to harass and burden Trustwell.

Trustwell, by contrast, has responded in good faith, with reasonable limitations. It answered the interrogatories it could while asking that Foodwit revise the remainder to comply with Rule 33. It agreed to produce the template license and employee confidentiality agreements that govern its disclosure of its trade secrets from 2017, when the parties' relationship began, to the present. And in a further effort to compromise, it offered to produce documents sufficient to show the security measures it uses to protect its trade secrets with respect to its employees. These are reasonable and good faith efforts to compromise. Foodwit rejected every compromise, proposed no alternative of its own, and now asks the Special Master to allow it to take limitless discovery. Foodwit's motion should be denied.

## FACTUAL BACKGROUND

On August 21, 2026, Foodwit served its second set of interrogatories and first set of requests for production. Mot. Exs. A, B. Rather than seek targeted discovery, Foodwit drafted its requests to reach every one of the more than one hundred trade secrets it says are at issue. Interrogatory Nos. 3–6 each demand a separate, detailed answer "for each trade secret you allege Foodwit misappropriated," including every basis for Trustwell's claims, every detail of

each trade secret's development, and every person who ever had access to it. Mot. Ex. A at 6. The document requests are no narrower. Request Nos. 9–11 and 18 seek "all documents and communications" concerning Trustwell's disclosure of "any element of any trade secret" to "any third party," all related agreements and licenses, and documents identifying every person with access to each trade secret. Mot. Ex. B at 6–8. Request Nos. 15–17 and 26, in turn, seek all documents concerning "any measures" Trustwell has taken to maintain secrecy, "all employee agreements," and every document relating to the security practices alleged in paragraph 25 of the SAC. *Id.* at 7–9. None of these requests is limited in time.

Trustwell timely served its responses on September 21, 2026. Mot. Exs. C, D. Although it properly objected to the requests' overbreadth and burden, and to Interrogatory Nos. 3–6 as exceeding Rule 33's 25-interrogatory limit, Trustwell did not simply stand on its objections. It provided substantive responses to Interrogatory Nos. 2 and 7–10. Mot. Ex. C at 4–5, 9–13. And in response to the document requests, it agreed to produce the documents that actually show how it protects its trade secrets when it discloses them: its form license and confidentiality agreements from 2017, when Foodwit became a licensee, to the present. Mot. Ex. D at 11–12.

Foodwit responded with deficiency letters on October 13 and 16, 2026, and the parties met and conferred by phone. Mot. Exs. E, F; Dutkiewicz Decl. Ex. A. During the meet and confer process, in a further effort to compromise, Trustwell also offered to produce documents sufficient to show the security measures it uses with respect to its employees. *Id.* Foodwit rejected each of Trustwell's proposals. Then Foodwit moved to compel.

## ARGUMENT

### I. INTERROGATORY NOS. 3–6 ARE OVERBROAD, UNDULY BURDENSOME, AND IMPERMISSIBLY COMPOUND, AND FOODWIT FAILS TO REBUT TRUSTWELL'S VALID OBJECTIONS.

Foodwit asks the Special Master to compel Trustwell to answer Interrogatory Nos. 3–6 in full, for every one of the more than one hundred trade secrets Foodwit says are at issue. Mot.

at 2, 5–6. The Special Master should decline to do so because the interrogatories are unduly burdensome, overly broad, and disproportionate to the needs of the case (objections Foodwit does not even address), and they far exceed the 25 interrogatories Rule 33(a)(1) permits.

### A. Foodwit Does Not Dispute That Interrogatory Nos. 3–6 Are Overly Broad and Unduly Burdensome.

Foodwit's motion addresses only two issues: relevance and the number of subparts. *See* Mot. at 3–6. But Trustwell asserted several other independent objections to Interrogatory Nos. 3–6, including that they are overly broad and unduly burdensome, which Foodwit does not even attempt to dispute. *See* Mot. Ex. C at 5–9. These unrebutted objections are reason enough to deny the motion.

Each interrogatory requires Trustwell to "describe with specificity" every basis for its claims, every detail of how, when, where, and by whom each trade secret was developed, and every individual who ever had access to or knowledge of each trade secret. Mot. Ex. A at 6. Demands to "describe with specificity" every fact on a topic are unduly burdensome and not proportional to the needs of the case. *M.S. v. Angus*, 2025 WL 4742267, at *7 n.2 (C.D. Cal. Nov. 24, 2025) (denying motion to compel interrogatories seeking "all facts" and noting that "[c]ontention interrogatories that ask for 'each and every' or all documents, facts, activities, and actions that support a claim may be overly broad and unduly burdensome"). Indeed, courts have recognized that interrogatories "should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents." *Id.* at *7 (citations omitted). Yet that is exactly what Foodwit demands here.

The burden and overbreadth here are particularly acute because the interrogatories require a response on a trade-secret-by-trade-secret basis for a thirty-plus-year period—since 1991 when Trustwell first launched its Genesis platform. No case cited by Foodwit requires a party to provide this exhaustive information on such a granular level for more than one hundred

trade secrets. In *Mattson Technology, Inc. v. Applied Materials, Inc.*, for example, the court compelled trade-secret-by-trade-secret responses where only twelve trade secrets were at issue. 2026 WL 1303361, at *6 (N.D. Cal. May 12, 2026). Here, by Foodwit's own count, Trustwell asserts "over one hundred individual trade secrets." Mot. at 2, 5. Requiring Trustwell to provide specific, exhaustive narratives for every development step and every person with access, multiplied across each asserted trade secret, for more than thirty years, is far beyond anything *Mattson* or any other case Foodwit cites approved. The Special Master should sustain Trustwell's objections and deny Foodwit's motion.

### B. Interrogatory Nos. 3-6 Are Impermissibly Compound and Exceed The Limit Imposed by Rule 33.

These interrogatories are separately objectionable on the grounds that they are impermissibly compound and, when considered together, far exceed the 25-interrogatory limit set by Rule 33. Rule 33 is clear on this point: a "party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). "[S]ubparts are counted as a single interrogatory if 'they are logically or factually subsumed within and necessarily related to the primary question.'" *Warren v. Bastyr Univ.*, 2013 WL 1412419, at *1 (W.D. Wash. Apr. 8, 2013) (citations omitted). As the court in *Warren* explained, a single interrogatory asking "state the name, address and telephone number of each person present at the meeting" is considered one interrogatory because it asks "for several bits of information related to the same topic." *Id.* (citations omitted). But if "the interrogatory poses a question that can be answered fully and completely without answering the second question, then the subparts are discrete." *Id.*

Interrogatory Nos. 3–6 ask Trustwell to provide an answer "for each trade secret you allege Foodwit misappropriated." Mot. Ex. A at 6. These interrogatories do not seek several bits of information about a single topic. Each one poses the same question separately about every asserted trade secret, and each of those questions stands on its own: Trustwell could fully

answer how one trade secret was developed, or who had access to it, without saying anything about any other. Each trade secret is therefore a discrete subpart. *See Rambus Inc. v. NVIDIA Corp.*, 2011 WL 11746749, at *14 (N.D. Cal. Aug. 24, 2011) (treating interrogatories seeking information about 300 different accused products as 300 distinct interrogatories); *Stamps.Com, Inc. v. Endicia, Inc.*, 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009) (finding that "interrogatories seeking facts relating to separate patents or separate accused products seek information concerning distinct subjects and, therefore, constitute separate interrogatories").[1]

These interrogatories thus are not four interrogatories but rather hundreds, far exceeding the limit Rule 33(a)(1) imposes. And Foodwit's authority is distinguishable. Those cases involved far fewer trade secrets—*Mattson* involved twelve, *Stemcell* involved ten, and *BladeRoom* involved twenty five—making a trade-secret-by-trade-secret approach more proportionate in those cases, but not here. *See Mattson,* 2026 WL 1303361, at *2; *Stemcell Techs. Canada Inc. v. StemExpress, LLC*, 2022 WL 4021905, at *2 (N.D. Cal. Sept. 3, 2022); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2017 WL 11637729, at *1 (N.D. Cal. Mar. 9, 2017). Foodwit's motion should be denied and Foodwit must redraft these requests to comply with Rule 33, as Trustwell suggested it do months ago.

### C. Trustwell Did Not Waive Its Numerosity Objection.

Because Interrogatory Nos. 3–6 are plainly compound and on their face far exceed 25 individual requests, Foodwit attempts to save them by arguing that Trustwell waived its numerosity objection by voluntarily answering other interrogatories in the same set. Mot. at 5. That argument would punish Trustwell for its good faith effort to respond where it could, and it finds no support in the law. Indeed, none of the cases cited by Foodwit supports its waiver argument. The court in *Olen Props. Corp. v. ACE Am. Ins. Co.*, for example, found that the

[1] This is why Trustwell did not object that Foodwit's Interrogatory No. 1, which requested identification of the trade secrets at issue, contained subparts. In contrast, Interrogatory Nos. 3-6 are classic subpart requests.

plaintiff waived its compound objection by responding to all of the defendant's interrogatories. 2017 WL 11635014, at *3 (C.D. Cal. Jan. 30, 2017). The court there made clear that "the responding party [should not] refuse to answer any rogs until the numeric dispute is resolved." *Id.* The court in *TIW Holdings LLC v. Hotbox Farms LLC* took a similar approach. It held that "defendant did not waive numerosity objections by responding to what it considered the first twenty-five interrogatories before objecting to the rest." 2025 WL 1112840, at *3 (D. Or. Apr. 15, 2025). This is exactly what Trustwell did.

## II. FOODWIT'S DOCUMENT REQUESTS ARE OVERLY BROAD AND UNDULY BURDENSOME. TRUSTWELL'S RESPONSES AGREEING TO PRODUCE TARGETED AND RELEVANT DOCUMENTS ARE APPROPRIATE.

Foodwit's motion fares no better as to the document requests it put at issue. Those requests fall into two categories. The first seeks documents concerning Trustwell's disclosure of its trade secrets. RFP Nos. 9–11, 18; Mot. Ex. B at 6–8. The second seeks documents concerning the reasonable measures Trustwell takes to maintain the secrecy of its asserted trade secrets. RFP Nos. 15–17, 26; Mot. Ex. B at 7–9. None of these requests contains any limitation as to time, thereby encompassing a period dating back to 1991, and each applies to every one of the more than one hundred trade secrets Foodwit says are at issue. Mot. at 1. Foodwit neither addresses these defects nor sufficiently explains why Trustwell's offers to produce the license, confidentiality, and employee agreements that actually govern its disclosures, along with documents sufficient to show its employee security measures, are inadequate. Its motion should be denied.

### A. Trustwell Has Offered A Reasonable, Proportionate Production That Goes To The Heart Of What Foodwit Says It Needs.

Request Nos. 9-11 and 18 are facially overbroad. Request No. 9 seeks "[a]ll documents and communications concerning your disclosure of any element of any trade secret" to "any third party." Mot. Ex. B at 6. Read literally, that request reaches every customer interaction, every software training session, every sales demonstration, and every employee onboarding

document Trustwell has ever generated, for more than one hundred alleged trade secrets, since at least 1991. Request Nos. 10, 11, and 18 are no narrower. *Id.* at 7–8.

Request Nos. 15–17 and 26 suffer from the same overbreadth. They seek "[a]ll documents and communications concerning any measures" Trustwell has taken to maintain the secrecy of each trade secret (RFP No. 15); "[a]ll agreements and communications concerning confidentiality, non-disclosure, or protection" of each trade secret, "including all employee agreements" (RFP No. 16); and all documents and communications concerning the employee-access practices and the confidentiality agreements alleged in paragraph 25 of the SAC (RFP Nos. 17, 26). Mot. Ex. B at 7–9. These requests reach every internal policy, every employee communication, every training record, and every agreement with every employee Trustwell has ever had since the company began, since at least 1991, and for more than one hundred alleged trade secrets.

Although these requests are plainly objectionable, Trustwell nevertheless agreed to produce its form license agreements and employee confidentiality agreements from 2017 to the present. During the parties' October 26, 2026 meet and confer, Trustwell offered Foodwit even more. It agreed to also produce documents sufficient to show the security measures it uses with respect to its employees. Dutkiewicz Decl. Ex. A. These documents provide the information Foodwit seeks—the terms and conditions under which Trustwell discloses its trade secrets to third parties and its employees. By contrast, the identity of each customer that licensed Genesis Foods, the identity of any person employed by Trustwell going back to its founding, and the number of times Trustwell has disclosed its trade secrets subject to the protections of its form agreements, say nothing about the reasonable measures Trustwell used to keep its trade secrets secret. Foodwit is simply not entitled to that information. And the requests are plainly designed to impose as much burden as possible.

Trustwell's offer to produce template agreements is more than sufficient. Courts considering this issue agree. In *Gilmore v. Safe Box Logistics, Inc.*, for example, the plaintiff sought to compel "all agreements" between FedEx and every service provider. 2023 WL 361081, at *2 (N.D. Cal. Jan. 23, 2023). Like Trustwell here, FedEx objected that producing "thousands of separate contracts" would be unduly burdensome and disproportionate, and instead offered agreements with the named service provider and "exemplars of the Agreements for each year" in the relevant period. *Id*. Based on these representations, the court denied the plaintiff's request that FedEx be compelled to produce the "entire repository of such agreements." *Id*. The same result should follow here.

**B. Foodwit's Justifications For Unlimited Discovery Fail**.

Foodwit attempts to justify its requests by relying on (1) unsupported and self-serving statements by an adversary in an unrelated litigation brought by Trustwell, (2) the mistaken premise that, by alleging it maintains reasonable secrecy measures, Trustwell has opened the door to every internal document that could conceivably relate to those measures, and (3) the assertion that any temporal limitation is improper because a pre-2017 disclosure might bear on secrecy. None of these arguments justifies the unlimited production Foodwit demands, and none shows that the targeted production Trustwell has proposed is insufficient.

**1. The *Cronometer* Litigation Is Irrelevant.**

Foodwit's reliance on *ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-1586 (D. Or.), to justify its grossly overbroad discovery is misplaced. In that case, Trustwell sued Cronometer for, among other things, trade secret misappropriation and breach of a limited-use license agreement after discovering certain misconduct. But Foodwit cites only unsworn and self-serving defenses by Cronometer, which, like Foodwit here, was caught violating its legal obligations to Trustwell. Whether a given customer chooses to violate its legal obligations to Trustwell has no bearing on the reasonableness of the protective measures that Trustwell

employs. Rogue actors will always exist, as Foodwit demonstrates. But the fact that Trustwell sued Cronometer after discovering its misconduct demonstrates that Trustwell takes very seriously its reasonable protective measures, as well as any efforts to undermine them. To the extent Foodwit's concern is that Trustwell disclosed trade secrets outside any protective arrangement, Trustwell is willing to identify any such instance it identifies through a reasonable search, which more than sufficiently addresses Foodwit's stated concern without the unbounded search its requests demand.

**2. Trustwell Is Not Withholding Documents Relating To Its Allegations In Response To Request Nos. 17 and 26.**

Foodwit argues that Trustwell's responses to Request Nos. 17 and 26 are insufficient because Trustwell is "withhold[ing] documents containing direct evidence" of its allegations. Mot. at 9. Trustwell is not withholding that evidence; it has offered to produce it. Request No. 26 seeks documents concerning agreements that are "substantially similar" to Foodwit's license. Trustwell agreed to produce exactly that: template license agreements that govern Trustwell's relationships with third parties. Likewise, Request No. 17 asks for documents concerning Trustwell's employee security measures, including tracking and limiting employee access. Again, Trustwell agreed to produce template confidentiality agreements signed by employees and documents sufficient to show its security measures. Nothing more is required.

**3. The 2017 Time Limitation Is Reasonable And Appropriate.**

Foodwit faults Trustwell's agreement to search for and produce documents going back to 2017 and instead demands every document concerning every disclosure and every protective measure going back more than thirty years, to the launch of Genesis in 1991, across more than one hundred alleged trade secrets. Trustwell offered to produce documents from 2017 to the present because that is when the parties' relationship began: Foodwit became a Genesis Foods licensee in 2017, and Trustwell's claims arise from Foodwit's access to and use of Genesis Foods under that license.

Foodwit provides no justification for the unlimited temporal scope of its request. It identifies no pre-2017 disclosure, other than the unsupported *Cronometer* assertion addressed above, and it does not explain why more than three decades of records are proportional to the needs of this case. *Zoho Corp. Pvt. Ltd. v. Freshworks, Inc.*, 2020 WL 6687393, at *1 (N.D. Cal. Oct. 27, 2020) (imposing a temporal limit on discovery requests in trade secret case); *Loop AI Labs Inc. v. Gatti*, 2016 WL 9132846, at *3 (N.D. Cal. May 6, 2016) (in a trade secret case, finding requests overbroad as to scope and "limit[ing] the following RFPs to a reasonable period of time connected to the wrongdoing alleged in the operative complaint, or January 1, 2012 through December 31, 2015."). Nor has Foodwit ever proposed any reasonable limitation as to time, either in its motion or during the meet-and-confer process. Instead, it continues to insist on no limit at all. This is unjustified and unreasonable, and Foodwit's motion should be denied to the extent it seeks documents predating the parties' relationship.

## CONCLUSION

For all the reasons above, Trustwell respectfully requests that the Special Master deny Foodwit's Motion to Compel Responses to Discovery Requests.

Dated: November 6, 2026

**JONES DAY**

*/s/ Cary D. Sullivan*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email: btalcott@dunncarney.com

*Attorneys for Plaintiff*
TRUSTWELL

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November, 2026, I caused to be served the foregoing**: TRUSTWELL'S OPPOSITION FOODWIT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS** on the following party via the following method(s):

P. Andrew McStay, Jr.
Email: andymcstay@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
Telephone: +1 (503) 241-2300
Facsimile: +1 (503) 778-5299

Matthew S. Warren (pro hac vice)
Erika H. Warren (pro hac vice)
Shaida Shahinfar (pro hac vice)
Email: 25-880@cases.warrenlex.com
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California 94114
Telephone: (415) 895-2940
Facsimile: (415) 895-2964

*Attorneys for RLH Assets, LLC d/b/a Foodwit*

by:
☐ U.S. Postal Service, ordinary first class mail
☒ electronic service
☐ other (specify) Email

**JONES DAY**

*/s/ Lauren E. Dutkiewicz*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Lauren E. Dutkiewicz (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com
Email: ldutkiewicz@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email: btalcott@dunncarney.com

*Attorneys for Plaintiff Trustwell*